J-S23031-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Y.K.W., a Minor | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.I.H., Mother | : | No. 3207 EDA 2016 |

Appeal from the Order dated September 16, 2016
in the Court of Common Pleas of Philadelphia County,
Family Court Division, No(s): CP-51-AP-0000786-2015;
CP-51-DP-0001907-2013

| | | |
|---|---|---|
| IN THE INTEREST OF: K.D.W., a Minor | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.I.H., Mother | : | No. 3208 EDA 2016 |

Appeal from the Order dated September 16, 2016
in the Court of Common Pleas of Philadelphia County,
Family Court Division, No(s): CP-51-AP-0000785-2015;
CP-51-DP-0001908-2013

| | | |
|---|---|---|
| IN THE INTEREST OF: I.T.W., a Minor | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.I.H., Mother | : | No. 3209 EDA 2016 |

Appeal from the Order dated September 16, 2016
in the Court of Common Pleas of Philadelphia County,
Family Court Division, No(s): CP-51-AP-0000784-2015;
CP-51-DP-0001909-2013

BEFORE:  OLSON, SOLANO and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED MAY 05, 2017**

K.H. ("Mother") appeals from the Orders granting the Petitions, filed by the Philadelphia Department of Human Services ("DHS"), involuntarily terminating Mother's parental rights to her children, Y.K.W., K.D.W. and I.T.W. (collectively, "Children"), pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b).[1] Mother's counsel, Gary Server, Esquire ("Counsel"), has filed a Motion to Withdraw from his representation of Mother, and a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).[2] We grant Counsel's Motion to Withdraw and affirm the Orders of the trial court.

We adopt the trial court's comprehensive summary of the facts and procedural history for the purpose of this appeal. **See** Trial Court Opinion, 12/6/16, at 1-5.

On September 16, 2016, the trial court entered its Orders terminating Mother's parental rights to Children, and changing Children's placement goals to adoption. Mother filed timely Notices of Appeal, accompanied by a Pa.R.A.P. 1925(b) Concise Statements of matters complained of on appeal.

---

[1] This Court consolidated Mother's appeals for disposition. We additionally note that Children's father has filed separate appeals of the orders terminating his parental rights to Children, and changing their placement goals to adoption, at Nos. 3340, 3341 & 3342 EDA 2016.

[2] This Court has extended the **Anders** principles to cases involving the termination of parental rights. **In the Interest of J.J.L.**, 150 A.3d 475, 479 (Pa. Super. 2016).

Subsequently, Counsel filed with this Court a Motion to Withdraw from his representation of Mother, and an **Anders** brief.

When presented with an **Anders** brief, this Court may not review the merits of the underlying issues until we address counsel's request to withdraw. **J.J.L.**, 150 A.3d at 479. To be permitted to withdraw, counsel must (1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) furnish a copy of the brief to the client; and (3) advise the client that he or she has the right to retain private counsel or raise additional arguments that the client deems worthy of the court's attention. **In re S.M.B.**, 856 A.2d 1235, 1237 (Pa. Super. 2004).

In his Motion to Withdraw, Counsel states that he "has made a thorough and conscientious examination of the record[,]" and "believes that this appeal[,] in its present procedural posture[,] is wholly frivolous and without support in the law or facts." Motion to Withdraw, 1/22/17, at ¶¶ 4, 5. Counsel represents that he has notified Mother in writing of his conclusion that the appeal has no merit, that "[C]ounsel is moving to withdraw[,]" and that Mother "has the right to represent herself and to participate in the appeal or to hire private counsel." **Id.** at ¶ 3. Counsel states that he has notified Mother of the withdrawal request, supplied her with copies of the Motion to Withdraw and the **Anders** brief, and sent Mother a letter explaining her right to proceed pro se or with new, privately-

retained counsel to raise any additional points or arguments that Mother believes have merit. *See id.* at ¶ 3; Letter, 1/22/17. Consequently, we conclude that Counsel has met the procedural requirements of *Anders*.

We must next determine whether counsel's *Anders* brief meets the requirements established by the Pennsylvania Supreme Court in *Santiago*. In *Santiago*, our Supreme Court stated that the *Anders* brief must

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. Further, "[a]fter establishing that the antecedent requirements have been met, this Court must then make an independent evaluation of the record to determine whether the appeal is, in fact, wholly frivolous." *Commonwealth v. Palm*, 903 A.2d 1244, 1246 (Pa. Super. 2006) (quoting *Commonwealth v. Townsend*, 693 A.2d 980, 982 (Pa. Super. 1997)).

In the *Anders* brief, Counsel has provided a summary of the facts and procedural history of the case, referred to evidence of record that might arguably support the issues raised on appeal, provided citations to relevant case law, stated his conclusion that the appeal is wholly frivolous, and

- 4 -

provided his reasons for concluding that the appeal is frivolous. Accordingly, counsel has complied with the requirements of **Anders** and **Santiago**.[3]

Mother has not filed a *pro se* brief or a counseled brief with new, privately-retained counsel. We, therefore, review the following issues raised in the **Anders** brief:

> [1.] WHETHER UNDER THE JUVENILE ACT, 42 PA.C.S.A. SECTION 6351, AND 55 PA. CODE SECTION 3130.74, IN ACCORDANCE WITH THE PROVISIONS OF THE FEDERAL ADOPTION AND SAFE FAMILIES ACT [("ASFA")], 42 U.S.C.[A.] SECTION 671 *ET SEQ.*, REASONABLE EFFORTS WERE MADE TO REUNITE [] MOTHER WITH [] CHILDREN[,] AND WHETHER THE GOAL CHANGES TO ADOPTION WERE THE DISPOSITIONS BEST SUITED TO THE SAFETY, PROTECTION AND PHYSICAL, MENTAL AND MORAL WELFARE OF [] CHILDREN[?]
>
> [2.] WHETHER IT WAS PROVEN BY CLEAR AND CONVINCING EVIDENCE THAT MOTHER'S PARENTAL RIGHTS SHOULD BE TERMINATED UNDER SECTIONS 2511(a) & (b)[?]

**Anders** Brief at 6.

In the **Anders** brief, Mother claims that the Department of Human Services ("DHS") and its contracted agencies failed to make reasonable efforts to reunite her with Children. **Id.** at 17. Mother asserts that DHS failed to give her necessary paperwork and the Family Service Plan ("FSP"). **Id.** Mother also contends that the social workers told her what to do, without providing her objectives in writing. **Id.** Mother claims that she

---

[3] We note that Counsel failed to include the Pa.R.A.P. 1925(b) Concise Statement in the **Anders** brief. **Cf.** Pa.R.A.P. 2111(d) (there shall be appended to the brief of the appellant a copy of the statement of errors complained of on appeal ....). As Counsel's omission does not affect our review, we will address the claims raised in the **Anders** brief.

failed to comply with the objectives through no fault of her own. *Id.* For these reasons, Mother argues that DHS did not make reasonable efforts to reunite her with Children, thereby violating the Juvenile Act and the ASFA. *Id.*

Our Supreme Court has set forth the following standards in reviewing the termination of parental rights:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. ... [O]ur standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.* As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.* Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

*In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012) (some internal citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, as we have explained, "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction,

without hesitance, of the truth of the precise facts in issue.'" *Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

In its Opinion, the trial court set forth the relevant law and its reasons for terminating Mother's parental rights to Children pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b). *See* Trial Court Opinion, 12/6/16, at 5-7, 8-10. The trial court's findings are supported in the record; its legal conclusions are sound; and we discern no abuse of discretion by the trial court. *See id.* We therefore affirm on the basis of the trial court's Opinion, with regard to the termination of Mother's parental rights to Children. *See id.*; *see also In re D.C.D.*, 105 A.3d 662, 675 (Pa. 2014) (stating that, "while reasonable efforts should be considered and indeed, in the appropriate case, a trial court could insist upon their provision, we hold that nothing in the language or the purpose of Section 6351(f)(9) [of the Juvenile Act] forbids the granting of a petition to terminate parental rights, under Section 2511, as a consequence of the agency's failure to provide reasonable efforts to a parent.").

In her second claim, Mother argues that it was not proven, by clear and convincing evidence, that her parental rights should be terminated. *Anders* Brief at 19. Mother asserts that a change of goal is "not the disposition best suited to the safety, protection and physical, mental and moral welfare of [C]hildren." *Id.* In support, Mother claims to have a strong bond with [C]hildren[,] which was demonstrated by the attention she

- 7 -

lavished on them during the visits she kept[,] and by the affection they showed her during her visits." *Id.* Mother asserts that Children were asking to come home, and that she has stable housing. *Id.*

"When we review a trial court's order to change the placement goal for a dependent child to adoption, our standard is abuse of discretion." *In re N.C.*, 909 A.2d 818, 822 (Pa. Super. 2006). "[T]he best interests of the child and not the interests of the parent must guide the trial court, and the burden is on the child welfare agency involved to prove that a change in goal would be in the child's best interest." *In re R.I.S.*, 36 A.3d 567, 573 (Pa. 2011) (citations omitted). The safety, permanency, and well-being of the child must take precedence over all other considerations. *In the Matter of S.B.*, 943 A.2d 973, 978 (Pa. Super. 2008).

Having already determined that it is in Children's best interests to terminate Mother's parental rights, we also agree that it is in Children's best interests to change their permanency goals to adoption. Accordingly, we affirm the termination of Mother's parental rights as to Children, and the change of Children's permanency goals to adoption.

Our independent review discloses no further non-frivolous issues that could be raised by Mother.[4] Accordingly, we grant Counsel's Motion to Withdraw, and affirm the Orders of the trial court.

---

[4] Our review discloses that the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5) and (8). On appeal, Mother challenges only the trial court's termination pursuant to subsection (a)(2).

- 8 -

Motion to Withdraw granted. Orders affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/5/2017

---

As we affirm the trial court's termination pursuant to subsection (a)(2), we need not address potential challenges to termination pursuant to subsections (a)(1), (5) or (8). **See In re S.M.B.**, 856 A.2d 1235, 1240 (Pa. Super. 2004) (stating that this Court need only agree with the trial court's decision as to any one subsection of 23 Pa.C.S.A. § 2511(a), in order to affirm a termination of parental rights).

# IN THE COURT OF COMMON PLEAS
# FOR THE COUNTY OF PHILADELPHIA
# FAMILY COURT DIVISION

| | | |
|---|---|---|
| In the Interest of Y.K.W. | : | CP-51-DP-0001907-2013 |
| | : | CP-51-AP-0000786-2015 |
| In the Interest of K.D.W. | : | CP-51-DP-0001908-2013 |
| | : | CP-51-AP-0000785-2015 |
| In the Interest of I.T.W. | : | CP-51-DP-0001909-2013 |
| | : | CP-51-AP-0000784-2015 |
| | : | |
| | : | FID: 51-FN-465818-2009 |
| | : | |
| | : | |
| APPEAL OF: K.I.H., Mother | : | 3207/3208/3209 EDA 2016 |

**OPINION**

**Fernandes, J.:**

Appellant K.I.H. ("Mother") appeals from the order entered on September 16, 2016, granting the petition filed by the Philadelphia Department of Human Services ("DHS"), to involuntarily terminate Mother's parental rights to Y.K.W. ("Child 1"), K.D.W. ("Child 2") and I.T.W. ("Child 3") ("Children") pursuant to the Adoption Act, 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b). Gary Server, Esq., counsel for Mother, filed a timely Notice of Appeal with a Statement of Matters Complained of on Appeal pursuant to Rule 1925(b).

**Factual and Procedural Background:**

The family in this case became known to DHS on February 28, 2013, when DHS received a General Protective Services report that Mother had just given birth, was using drugs and had not been attending prenatal care. DHS visited Mother in her home, and Mother accepted In-Home Protective Services. These services were conditioned on Mother providing drug screens, which she repeatedly failed to provide. On September 5, 2013, DHS received a report that Mother continued to use drugs in the home, that there was no food in the home and that the conditions were filthy. D.W. ("Father") was not involved in the care of the Children. On September 17, 2013, DHS filed an urgent petition and removed the Children from the home. The Children were

adjudicated dependent on October 2, 2013, and fully committed to DHS custody. DHS then developed a Family Service Plan ("FSP") with objectives for Mother. Between 2013 and 2015, Mother did not complete her objectives. On November 3, 2015, DHS filed petitions to terminate Mother's parental rights.

The goal change and termination trial was held on September 16, 2016. The foster care agency supervisor testified that during the time she was involved with the case, from June 2015 to June 2016, Mother had monthly supervised visits with the Children. Mother missed one visit, and her interactions with the Children were very basic. (N.T. 9/16/16, pgs. 19, 24-25). Child 2 has aggression problems and attention disorders, and Child 1 has the same issues with lessened severity. Both children are receiving therapy. (N.T. 9/16/16, pg. 27). Mother is not involved in the Children's therapy or schooling. (N.T. 9/16/16, pg. 32). The Children are currently in a pre-adoptive home. (N.T. 9/16/16, pg. 31). The Children had had difficulties when placed with their current foster parent, but now feel "right at home" and have become very comfortable faster than expected. The Children now look to the foster parent for all their needs. (N.T. 9/16/16, pg. 33). The agency had developed Individual Service Plan ("ISP") objectives for Mother. The foster parent has a wonderful, loving bond with all the Children. (N.T. 9/16/16, pg. 34). The Children are currently the happiest they have ever been, and would suffer no irreparable harm if Mother's parental rights were terminated. (N.T. 9/16/16, pg. 34). Mother has not parented the Children at all since June 2015. She is not bonded with the Children. (N.T. 9/16/16, pg. 38). The DHS intake worker testified that he had been involved with this case since 2012, when Mother's parental rights to another child were involuntarily terminated. The Children in this case were originally supervised by DHS, and allowed to remain with Mother. (N.T. 9/16/16, pgs. 68, 71). During the supervision period, Mother stopped complying with drug screens at the Clinical Evaluation Unit ("CEU") and the quality of her home degraded until it was no longer fit for habitation by the Children. At this point, the Children were adjudicated dependent, but remained in Mother's home. (N.T. 9/16/16, pgs. 72-74). Mother then tested positive for drugs, did not have food in the house, lost her utilities and missed a number of crucial medical appointments for the Children. The Children were then removed pursuant to an urgent petition. (N.T. 9/16/16, pg. 75). Mother's FSP objectives after the Children were removed were to take a Parenting Capacity Evaluation ("PCE"), attend CEU for dual diagnosis assessment and attend the Achieving Reunification Center ("ARC")

for parenting classes. (N.T. 9/16/16, pgs. 80-81). Mother began parenting classes at ARC, but did not complete them and was discharged for non-attendance. DHS re-referred Mother to ARC three times. (N.T. 9/16/16, pg. 82). Mother sometimes expressed a strong desire to finish parenting classes, but other times flatly refused to complete them. (N.T. 9/16/16, pg. 83). Mother completed the PCE, which recommended individual therapy for Mother. (N.T. 9/16/16, pg. 84). Mother has no employment or income, has never availed herself for a mental health assessment and is not engaged in therapy. (N.T. 9/16/16, pg. 85). Mother never completed random drug screens at CEU. (N.T. 9/16/16, pg. 86). Mother was ordered to CEU, but she refused to go. (N.T. 9/16/16, pg. 89). Mother's visits were originally supervised by the kinship foster parent. This foster parent claimed Mother was not attending visits, but Mother claimed she had attended. Visits were changed to monthly at the agency. The Children were upset when Mother missed visits. (N.T. 9/16/16, pgs. 89-91). Mother has a friendly, but not a parental, relationship with the Children. (N.T. 9/16/16, pg. 92). She is not involved in the Children's therapy. (N.T. 9/16/16, pg. 93). The Children's relationship with Mother made them upset when she missed visits, and made them act out inappropriately after Mother attended visits. (N.T. 9/16/16, pgs. 93-94). Mother has never been more than minimally compliant with her objectives. (N.T. 9/16/16, pg. 95). The Children would not suffer any irreparable harm if Mother's parental rights were terminated. (N.T. 9/16/16, pgs. 102-103). The Children are happy with their foster parent, and are better behaved than at any prior time in the life of the case. It is in their best interest to be adopted by the foster parent. (N.T. 9/16/16, pg. 104). Mother missed the Children's medical appointments and was inconsistent in visiting the Children. For a period of time, Mother simply did not visit at all. (N.T. 9/16/16, pgs. 105-106). Mother has not completed mental health treatment. (N.T. 9/16/16, pg. 107). Mother has not completed parenting classes or involved herself in the Children's therapy. (N.T. 9/16/16, pg. 108). The current DHS social worker testified that since she was assigned the case, four months before the trial, she met in person with Mother and discussed Mother's objectives. Mother admitted that she had done nothing to complete her objectives. (N.T. 9/16/16, pgs. 113-115, 121). Mother's outstanding objectives, in addition to parenting classes, were to engage in drug and alcohol and mental health treatment, and sign appropriate releases. Mother is not enrolled in any treatment program, and refused to sign releases because she wished to keep all treatment information private. (N.T. 9/16/16, pgs. 116-117). It is in the best interest of the Children to be adopted. The Children see the foster parent as their mom. (N.T. 9/16/16, pgs. 119-120). Mother

testified that she missed some FSP meetings but attended others. She also testified that she never attended any FSP meetings. Mother's testimony was confusing. She repeatedly testified to events and objectives from a prior termination. (N.T. 9/16/16, pgs. 134-135). She originally had unsupervised visits at the home of the prior foster parent, but had argued with the prior foster parent. Visits were changed to occur at the agency, and Mother stopped attending. Mother testified that she did not have a reason for her lack of attendance. (N.T. 9/16/16, pgs. 136-137). Mother attended court hearings where her objectives were discussed. Mother testified that she refused to go to CEU with the assigned DHS worker, but would have been perfectly willing to go if another worker had been assigned. Mother never completed a court-ordered assessment. (N.T. 9/16/16, pgs. 137-138, 159-160). Mother had been enrolled in therapy, but had stopped going. She did not know how long she had attended or when she stopped attending. (N.T. 9/16/16, pg. 140). Mother testified that she agreed with much of DHS's case: she starts but does not complete objectives. (N.T. 9/16/16, pg. 142). Mother testified that she never completed parenting classes because she spent her time parenting her other children, who have also been removed from her care. (N.T. 9/16/16, pg. 143). Mother testified that she never attended anger management, and missed her individual therapy because she was depressed. (N.T. 9/16/16, pg. 144). Mother has no employment and no income: she receives a Section 8 housing subsidy and welfare to cover her food expenses. (N.T. 9/16/16, pgs. 146-149). Mother testified that she completed an inpatient drug and alcohol treatment program on September 7, 2016, ten days before the trial. This program recommended that Mother continue to engage in an outpatient program, which was scheduled to begin on September 29, 2016. (N.T. 9/16/16, pgs. 148-153). Mother testified that she would work with DHS and accomplish her objectives if DHS removed her currently-assigned worker. (N.T. 9/16/16, pgs. 155-156). Following argument, the trial court terminated Mother's parental rights under 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b).[1] On October 10, 2016, Mother filed this appeal.

---

[1] The trial court terminated Father's parental rights on the same date. Father has appealed. *See 3340/3341/3342 EDA 2016.*

**Discussion:**

Mother avers the following errors on appeal:

1. Whether under the Juvenile Act, 42 Pa.C.S.A. Section 6351, and 55 Pa.Code Section 3130.74, in accordance with the provisions of the Federal Adoption and Safe Families Act, 42 U.S.C. Section 671 et seq., reasonable efforts were made to reunite Mother with [the Children] and whether the goal change to adoption was the disposition best suited to the safety, protections and physical, mental and moral welfare of [the Children]

2. Whether it was proved by clear and convincing evidence that Mother's parental rights should be terminated under Sections 2511(a)(2) and 2511(b)

Mother alleges that DHS did not provide reasonable efforts to reunify her with the Children. The court may terminate parental rights even if the state agency does not provide reasonable efforts to a parent. *In re D.C.D.*, 105 A.3d 662 (Pa. 2014) ("the remedy for an agency's failure to provide services is not to punish an innocent child, by delaying permanency through denying termination, but instead to conclude on the record that the agency has failed to make reasonable efforts, which imposes a financial penalty on the agency of thousands if not tens of thousands of dollars under federal law.")

The remedy for a lack of reasonable efforts at the termination stage is not a new trial, but a financial penalty to DHS. However, DHS has indeed made reasonable efforts in this case. Mother's visits were originally supervised by the prior foster parent, but when Mother alleged that the foster parent was lying by claiming Mother never attended visits, DHS changed visitation to occur at the agency, so Mother's attendance could be accurately tracked. (N.T. 9/16/16, pgs. 19, 24-25, 89-91). DHS referred Mother to ARC for services, and re-referred her three times when she was unsuccessfully discharged. (N.T. 9/16/16, pg. 82). The prior DHS worker attempted to personally escort Mother to CEU for drug screens and assessment, but Mother refused. (N.T. 9/16/16, pgs. 137-138, 159-160). The current DHS worker personally met with Mother to review her objectives, both before and during the scheduled FSP meeting. (N.T. 9/16/16, pgs. 113-115, 121). Throughout the life of this case, DHS has made reasonable efforts to refer Mother for services and provide her visits with her Children. The trial court found reasonable efforts on behalf of DHS. Mother's appeal of a lack of reasonable efforts lacks merit both factually and based on the case law of this Commonwealth.

Mother also alleges that the court erred in changing the Children's permanency goal from reunification to adoption. In a change of goal proceeding, the child's best interest must be the focus of the trial court's determination. The child's safety and health are paramount considerations. *In re A.H.*, 763 A.2d 873 (Pa. Super. 2000). Pennsylvania's Juvenile Act recognizes family preservation as one of its primary purposes. *In the Interest Of R.P. a Minor*, 957 A.2d 1205 (Pa. Super. 2008). As a result, welfare agencies must make efforts to reunify the biological parents with their child. Nonetheless, if those efforts fail, the agency must redirect its efforts toward placing the child in an adoptive home. Agencies are not required to provide services indefinitely when a parent is unwilling or unable to apply the instructions received. *In re R.T.*, 778 A.2d 670 (Pa. Super. 2001). The trial court should consider the best interest of the child as it exists presently, rather than the facts at the time of the original petition.

The Children in this case were originally supervised by DHS, and allowed to remain with Mother. (N.T. 9/16/16, pgs. 68, 71). Mother then stopped complying with drug screens, and the Children were adjudicated dependent, but remained with Mother. (N.T. 9/16/16, pgs. 72-74). The Children were only removed after the conditions of Mother's home degraded and the Children missed medical appointments. (N.T. 9/16/16, pg. 75). Mother's FSP objectives after the Children were removed were to take a PCE, attend CEU for dual diagnosis assessment and attend ARC for parenting classes. (N.T. 9/16/16, pgs. 80-81). Mother never completed parenting classes, and often told DHS that she had no desire or inclination to complete them. (N.T. 9/16/16, pgs. 82-83). Mother testified that she never completed parenting because she was too busy parenting the Children's siblings, who have also been removed from Mother's care. (N.T. 9/16/16, pg. 143). Mother completed the PCE, which recommended individual therapy for Mother. (N.T. 9/16/16, pg. 84). Mother has never availed herself for a mental health assessment and is not engaged in therapy. (N.T. 9/16/16, pg. 85). Mother claimed she had been enrolled in therapy, but had stopped going. She did not know how long she had attended or when she stopped attending. (N.T. 9/16/16, pg. 140). Mother refused random drug screens at CEU, in violation of court orders. (N.T. 9/16/16, pgs. 86, 89). Mother completed an inpatient drug and alcohol treatment program on September 7, 2016, ten days before the trial. This program was to be followed by an outpatient program, which was scheduled to begin on September 29, 2016, two weeks after the trial. Despite drugs being an issue for the entire life of the case, Mother only began to engage in treatment at the last minute,

and has demonstrated a pattern of not finishing programs she has started. (N.T. 9/16/16, pgs. 148-153). Mother testified that she would have been eager to complete her objectives if only she were assigned a different DHS worker. (N.T. 9/16/16, pgs. 137-138, 155-156, 159-160). Mother's visits were originally supervised by the kinship foster parent. This foster parent claimed Mother was not attending visits, but Mother claimed she had attended. Visits were changed to monthly at the agency. (N.T. 9/16/16, pgs. 89-91). After this change, Mother did not attend visits for several months. Mother refused to offer any reason why she stopped attending visits. (N.T. 9/16/16, pgs. 105-106, 136-137). The Children's relationship with Mother made them upset when she missed visits, and made them act out inappropriately after Mother attended visits. (N.T. 9/16/16, pgs. 93-94). The Children are in therapy, but Mother has not involved herself in the Children's therapy. (N.T. 9/16/16, pgs. 27, 32, 108). Mother has never been more than minimally compliant with her FSP and court orders, has fought with DHS and refused services, and failed to make any significant progress to place herself in a position to parent the Children. Mother has a friendly, but not a parental, relationship with the Children. (N.T. 9/16/16, pg. 92). Her interactions with the Children were very basic. (N.T. 9/16/16, pgs. 19, 24-25). Mother has not parented the Children at all since June 2015. (N.T. 9/16/16, pg. 38). The Children are currently in a pre-adoptive home. (N.T. 9/16/16, pg. 31). The Children feel "right at home" and have become very comfortable there. The Children now look to the foster parent for all their needs. (N.T. 9/16/16, pg. 33). The foster parent has a wonderful, loving bond with all the Children. (N.T. 9/16/16, pg. 34). The Children are currently the happiest they have ever been, and are better behaved than at any prior time in the life of the case. (N.T. 9/16/16, pg. 34, 104). The Children see the foster parent as their mom, and it is in their best interest to be adopted. (N.T. 9/16/16, pgs. 34, 104, 119-120). Because these facts were clearly and convincingly established by the credible testimony of DHS's witness, the trial court's change of permanency goal from reunification to adoption was proper.

The trial court terminated Mother's parental rights under four sections of 23 Pa.C.S.A. §2511(a). Mother only appeals the termination under one of these sections, so she has waived Sections 2511(a)(1), (a)(5) and (a)(8) on appeal. To affirm a termination, the appeals court need only affirm the trial court's determination under one section. *In re J.E.*, 745 A.2d 1250, 1255 (Pa. Super. 2000). As to Sections 2511(a)(1), (a)(5) and (a)(8), the trial court also did not abuse its discretion and found by clear and convincing evidence that at least six months before the petitions were filed

showed, by clear and convincing evidence, that Mother had failed or refused to perform parental duties, and would not be able to remedy this incapacity and place herself in a position to parent the Children. Termination under this section was proper.

After a finding of any grounds for termination under Section (a), the court must, under 23 Pa.C.S.A. §2511(b), also consider what - if any - bond exists between parent and child. *In re Involuntary Termination of C.W.S.M. and K.A.L.M.,* 839 A.2d 410, 415 (Pa. Super. 2003). The trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship". *In re Adoption of T.B.B.* 835 A.2d 387, 397 (Pa. Super. 2003). In assessing the parental bond, the trial court is permitted to rely upon the observations and evaluations of social workers. *In re K.Z.S.,* 946 A.2d 753, 762-763 (Pa. Super. 2008). In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis depends on the circumstances of the particular case. *In re K.Z.S.* at 762-763. However under 23 Pa.C.S.A. §2511(b), the rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care, if found to be beyond the control of the parent.

Mother's visits were originally supervised by the kinship foster parent, but after a dispute with the foster parent, visits were changed to monthly at the agency. For several months after this change, Mother did not attend any visits. (N.T. 9/16/16, pgs. 105-106, 136-137). The Children were upset when Mother missed visits, but also act out inappropriately when she attends visits. (N.T. 9/16/16, pgs. 89-91, 93-94). Mother has a friendly, but not a parental, relationship with the Children. (N.T. 9/16/16, pg. 92). Her interactions with the Children were very basic. (N.T. 9/16/16, pgs. 19, 24-25). She is not involved in the Children's therapy or schooling. (N.T. 9/16/16, pg. 32, 93, 108). Mother has missed the Children's medical appointments, and is inconsistent in her visitation. (N.T. 9/16/16, pgs. 105-106). Mother has not parented the Children at all since June 2015. She is not bonded with the Children. (N.T. 9/16/16, pg. 38). The Children would not suffer any irreparable harm if Mother's parental rights were terminated. (N.T. 9/16/16, pgs. 102-103). The Children are currently in a pre-adoptive home. (N.T. 9/16/16, pg. 31). The Children feel "right at home" and have become very comfortable there. The Children now look to the foster parent for all their needs. (N.T. 9/16/16, pg. 33). The foster parent has a wonderful, loving bond with all the

Children. (N.T. 9/16/16, pg. 34). The Children are currently the happiest they have ever been, and are better behaved than at any prior time in the life of the case. (N.T. 9/16/16, pg. 34, 104). The Children see the foster parent as their mom, and it is in their best interest to be adopted. (N.T. 9/16/16, pgs. 34, 104, 119-120). DHS's witnesses were unwavering and credible. Consequently, the court did not abuse its discretion when it found that it was clearly and convincingly established that there was no positive, beneficial parent-child bond with Mother, and that termination of Mother's parental rights would not destroy an existing beneficial relationship.

**Conclusion:**

For the aforementioned reasons, the trial court found that DHS made reasonable efforts to reunify the family. The court found that DHS met its statutory burden by clear and convincing evidence regarding termination of Mother's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b) and change of goal to adoption, since it would best serve the Children's emotional needs and welfare. The trial court's termination of Mother's parental rights was proper and should be affirmed.

By the court,

Joseph Fernandes J.