J-S42032-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: W.H.-O., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: W.H., FATHER | : | |
| | : | No. 295 EDA 2019 |

Appeal from the Order Entered December 19, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0002549-2015,
FID: 51-FN-002091-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: W.M.H.-O., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: W.H., FATHER | : | |
| | : | No. 297 EDA 2019 |

Appeal from the Decree Entered December 19, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0000045-2018,
FID: 51-FN-002091-2015

BEFORE: OTT, J., KUNSELMAN, J., and COLINS*, J.

MEMORANDUM BY COLINS, J.:                    **FILED AUGUST 16, 2019**

Appellant, W.H. ("Father"), appeals from the decree entered

December 19, 2018, that involuntarily terminated his parental rights to his

biological child, W.H.-O. ("Child"), born August 2015, and from the order that

_____

* Retired Senior Judge assigned to the Superior Court.

changed the Child's permanency goal from reunification with Father to adoption.[1] We affirm.

The facts and procedural history underlying this appeal are as follows. On September 17, 2015, the Philadelphia Department of Human Services ("DHS") obtained a shelter care order for Child, after Mother and Child were evicted from the home of Mother's relatives, where they had been staying. On October 26, 2015, Child was adjudicated dependent and committed to the custody of the DHS for placement in foster care, and Father was granted twice weekly supervised visitation. Order of Adjudication and Disposition – Child Dependent, 10/26/2015.

Permanency review hearings were held on January 26 and April 26, 2016. At the conclusion of the latter hearing, the trial court found that Father was incarcerated and had attended only a single visit with Child. Permanency Review Order ("PRO"), 4/26/2016. Father was released from incarceration in August 2016 and appeared in person at the permanency review hearing on September 26, 2016. N.T. at 8, 34; PRO, 9/26/2016. On October 13, 2016, Father was referred to the Achieving Reunification Center for housing and employment services, but he declined job training and employment assistance. Additional permanency review hearings were held on December 19, 2016, and January 9 and July 10, 2017.

---

[1] Child's mother consented to the termination of her parental rights and has not participated in this appeal.

On September 28, 2017, Father was arrested for aggravated assault, possession of a controlled substance, and other offenses and was detained on these charges.[2]  Due to his incarceration, Father did not attend status review hearings on October 2 and December 4, 2017.  Status Review Order ("SRO"), 10/2/2017; SRO, 12/4/2017.

On January 17, 2018, DHS filed petitions to terminate Father's parental rights to the Child pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b) and to change the Child's permanency goal from reunification with Father to adoption.  Additional permanency review hearings were held on January 23 and April 23, 2018, which Father again failed to attend due to his incarceration.  PRO, 1/23/2018; PRO, 4/23/2018.

On May 3, 2018, Father pleaded guilty to aggravated assault and possession of a controlled substance[3] and was immediately paroled.  On May 22, 2018, Father was again arrested, charged with burglary[4] and related offenses, and detained on these charges.[5]

---

[2] Docket Number CP-51-CR-0010701-2017.

[3] 18 Pa.C.S. § 2702(a) and 35 P.S. § 780-113(a)(16), respectively.

[4] 18 Pa.C.S. § 3502(a)(1)(ii).

[5] At the time of the termination hearing, these charges were still pending. Although we cannot consider any facts that were not before the trial court, we note that, according to the publicly available docket for Docket Number CP-

On December 19, 2018, the trial court held a hearing on the termination and goal change petitions.[6]  DHS presented the testimony of Tamika Palmer, a case manager for the community umbrella agency ("CUA"), Turning Points for Children; Palmer had been continuously assigned to Child's case since February 1, 2016.  N.T. at 6.  Palmer testified that Father had no contact with her between January 2017 and July 2018 and has never sent Child any cards or letters[7] and that Child was bonded with her foster mother and would not suffer any irreparable harm if Father's rights were terminated, "[b]ecause neither parent[] was actively in her life for the whole three years."  *Id.* at 28-33, 35.  Palmer also testified that Child has no developmental delays and that Child's foster family has made sure that Child's medical and dental care is up-

_____

51-CR-0005221-2018, on February 1, 2019, Father pleaded guilty to the burglary charge and was immediately paroled to a treatment facility.

[6] At the hearing, Child was represented by a guardian *ad litem* who was also an attorney.  *See In re L.B.M.*, 161 A.3d 172, 173-75, 180 (Pa. 2017) (courts must appoint counsel to represent the legal interests of any child involved in a contested involuntary termination proceeding; a child's legal interests are distinct from his or her best interest, in that a child's legal interests are synonymous with the child's preferred outcome, and a child's best interest must be determined by the court); *In re T.S.*, 192 A.3d 1080, 1089-93 (Pa. 2018) (a child's statutory right to appointed counsel is not waivable, even where the child is too young or nonverbal to communicate his or her preference; reaffirming the ability of an attorney-guardian *ad litem* to serve a dual role and to represent a child's non-conflicting best interests and legal interests); *In re G.M.S.*, 193 A.3d 395, 399-400 (Pa. Super. 2018) (orphans' court not required to appoint separate attorney to represent children's legal interests, so long as children's guardian *ad litem* was an attorney and children's legal and best interests did not appear to be in conflict).

[7] Palmer stated that Father sent Child "a picture" in 2016.  N.T. at 35.

to-date. *Id.* at 30-31. When asked if she "believe[d] it's in the child's best interest to be adopted by her foster parent[,]" Palmer answered affirmatively. *Id.* at 30; *see also id.* at 39.

At the conclusion of Palmer's direct examination, DHS entered into evidence DHS Exhibits 17 and 19, without objection. *Id.* at 34-35. As DHS's attorney explained, DHS Exhibit 17 "was a criminal docket pertaining to [Father] that was printed from the public record on July 12th, 2018[,]" and DHS Exhibit 19 consisted of "certified judgments of conviction pertaining to [F]ather . . . with regards to various criminal offenses[.]" *Id.* Father's criminal record began in 1995, and the longest period of time that Father lasted without a new criminal conviction was five years.

Father testified on his own behalf. He admitted that he was incarcerated at the time Child "came into care, in the fall of 2015" and "currently" – *i.e.*, at the time of the termination hearing. *Id.* at 52-53. He explained to the court: "I got out, Your Honor, and went back." *Id.* at 53. His expected release date was February 2019,[8] and he planned to enter a drug and alcohol inpatient treatment facility in Philadelphia. *Id.* at 52, 57.

Father admitted that he "really didn't know" Child. *Id.* at 55. He stated that he "missed visits with" Child, because he "was working at the time." *Id.* at 56. He conceded that he has not seen Child "since she was 18 months" old

---

[8] As noted above, according to the publicly available criminal docket, Father was released as expected in February 2019.

but added: "I know I've been in and out of jail, but I've always contacted [Palmer] to let her know where I was at." *Id.* at 58. When asked if he felt he had a bond with Child, Father answered, "Not right now, because I haven't had an opportunity to be with her." *Id.* at 59.

At the end of the hearing, the trial court stated that it believed both Palmer and Father to be credible, *id.* at 70; it then placed its findings of fact and conclusions of law on the record:

> What is most compelling is that DHS Exhibits 17 and 19 outline a very lengthy criminal record for [F]ather, much of which resulted in confinement, dating back to as early as 1995. . . . And, with respect to [Child], she has been in care for almost three years now, with [F]ather, by his own admission . . ., back and forth in jail, coming out – [F]ather's testimony was that, at one point, he was in for a little while, came out for a month, and within a month, was back, incarcerated.
>
> This is not the kind of stability that a three year-old child would need. And, given the length of [F]ather's criminal history, and the fact that he has been in and out of jail for [C]hild's entire life and even before [Child] was born, this [c]ourt isn't convinced that the conditions that have caused [Child] to be without her father's parental care and control will be remedied, long-term, by [F]ather. . . .
>
> [B]ack as far as September of 2016 . . . there was no treatment recommended for [F]ather in terms of drug and alcohol treatment.
>
> But we are back again with [F]ather, by his own admission, indicating that he's in a drug and alcohol program and trying to get himself together, plans to go to an inpatient drug and alcohol program, and then a halfway house.
>
> And there's no guarantee that, throughout the process, [F]ather will be able to successfully complete it such that he could reunify with [Child], and having been in care three years, this child deserves to have some permanency.

So, [the trial court found] that [F]ather's own actions are what have caused [Child] to be without the care and control that she needs of her father. So, that is with respect to 2511(a)(2).

With respect to 2511(b), . . . there was no bond between [F]ather and [Child] back in 2016 . . . [a]nd [F]ather has indicated that there isn't a bond with him and [Child] as we sit here today because he does not know [Child]. . . .

What's also concerning to this [c]ourt is that, even if [it] were to attribute to CUA a failure to make [Child] available for visits, the testimony from [Palmer] is there's no cards, no letters, no phone calls from [F]ather even inquiring about [Child] since his last visit with her in October of 2016. . . .

[P]ursuant to 2511(b), . . . it is in [Child]'s best interest to have [F]ather's parental rights terminated so that she can be freed for adoption.

*Id.* at 71-74. The trial court granted the termination petition pursuant to 23 Pa.C.S. § 2511(a)(2) and (b) and entered an order changing the Child's permanency goal from reunification to adoption. N.T. at 71, 73; PRO, 12/19/2018 (DHS "shall move forward with the goal of adoption").

On January 17, 2019, Father filed timely direct appeals of both the termination decree and the goal change order, along with concise statements of errors complained of on appeal for both. *See* Pa.R.A.P. 1925(a)(2)(i). The trial court entered its opinion on March 20, 2019, *see* Pa.R.A.P. 1925(a)(2)(ii), in which it augmented its analysis for § 2511(b), adding that "Child would not suffer any irreparable harm in terminating [Father's] parental rights, including that Father, by his own admission, admits to not knowing the Child and not having a bond with the Child." Trial Court Opinion, filed March 20, 2019, at 2 (citing N.T. at 30-31, 55-56, 58-59, 73-74).

Father presents the following issue for our review:

1.     Whether the [t]rial [c]ourt erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. §2511(a)(2)?

2.     Whether the [t]rial [c]ourt erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. §2511(a)(5)?

3.     Whether the [t]rial [c]ourt erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. §2511(a)(8)?

4.     Whether the [t]rial [c]ourt erred by finding, under 23 Pa.C.S.A. §2511(b), that termination of [Father]'s parental rights best serves the child's developmental, physical and emotional needs and welfare?

Father's Brief at 5 (trial court answers omitted).

Preliminarily, we note that Father raises no issues related to the order changing Child's permanency goal from reunification to adoption in his statement of questions involved. *Id.* "No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a). Father has thus waived all issues related to that order.[9]

We further observe that the trial court clearly stated that it "cannot terminate pursuant to [23 Pa.C.S. §] 2511(a)(5) and (a)(8), as this child was not removed from the care of [her] father but was, in fact, removed from the care of [her] mother" and, instead, was "going to terminate pursuant to [§] 2511(a)(2)." N.T. at 70-71; *see also* Trial Court Opinion, filed March 20,

_____

[9] Assuming Father has preserved any challenge to the goal change order, we would conclude that the trial court properly found that "it is in the best interest of the Child to change the goal to adoption." Trial Court Opinion, filed March 20, 2019, at 2 (citing N.T. at 29-31, 39).

- 8 -

2019, at 2 n.4 ("the trial court terminated parental rights to Father under 23 Pa.C.S.[] §[]2511(2) and (b) *only*" (emphasis in original)). Therefore, we need not address Father's second and third issues raised on appeal. *See* Father's Brief at 13-14.[10]

We consider Father's remaining issues in light of the following principles:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. If competent

_____

[10] Although Father did not raise any challenges pursuant to 23 Pa.C.S. § 2511(a)(1), DHS did bring the termination petition under that subsection as well, but the trial court did not rely upon that subsection to terminate Father's parental rights to Child, explaining:

In terms of terminating pursuant to 2511(a)(1), while I understand the testimony from CUA [case manager, Palmer,] that [F]ather did not visit for any of 2017 or 2018, I am not convinced that that is based on [F]ather evidencing a settled purpose to relinquish parental care and control. . . . So, I'm not going to terminate pursuant to 2511(a)(1).

N.T. at 70-71.

evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result.

We are guided further by the following: Termination of parental rights is governed by Section 2511 of the Adoption Act . . .

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. . . .

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. . . .

We need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm.

*In re B.J.Z.*, 207 A.3d 914, 921-22 (Pa. Super. 2019) (internal quotation marks and some internal citations omitted) (some formatting).

As noted above, in the current appeal, the trial court terminated Father's parental rights to Child under Section 2511(a)(2) and (b), which provide, in relevant part, as follows:

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds: . . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.—**The court in terminating the right of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(a)(2), (b).

Father contends that the trial court abused its discretion by terminating his parental rights, because "the evidence was not clear and convincing so as to establish grounds for termination[.]" Father's Brief at 10.[11] Father

_____

[11] The "Argument" section of Father's Brief begins with an argument not included in his statement of questions involved: "DHS failed to use reasonable efforts to assist [Father] in being reunited with [Child]." Father's Brief at 9.

Father hence has violated Pa.R.A.P. 2119(a), which mandates that "argument shall be divided into as many parts as there are questions to be argued." Additionally, "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a). As Father has not included a challenge to DHS's "reasonable efforts" in his statement of questions involved, we will not consider this argument.

> The briefing requirements scrupulously delineated in our appellate rules are not mere trifling matters of stylistic preference; rather, they represent a studied determination by our Court and its rules committee of the most efficacious manner by which appellate review may be conducted so that a litigant's right to judicial review as guaranteed by Article V, Section 9 of our Commonwealth's Constitution may be properly exercised.

*Commonwealth v. Briggs*, 12 A.3d 291, 343 (Pa. 2011).

Assuming this argument were not waived, Father's challenge to DHS's reunification efforts would still fail, because reasonable efforts at reunification are not required to support the grant of a petition for termination of parental rights. *In re D.C.D.*, 105 A.3d 662, 673-74 (Pa. 2014) (citing 42 Pa.C.S. § 6351(f)); *In re J.J.L.*, 150 A.3d 475, 482-83 (Pa. Super. 2016).

acknowledges that he "was incarcerated, intermittently, during the time [Child] was in care" but argues that "the fact of incarceration alone does not provide sufficient grounds for termination of parental rights." *Id.* (citing *In re C.S.*, 761 A.2d 1197 (Pa. Super. 2000)). Father additionally argues that, "once released from prison and having completed his goals regarding parenting and drug[s] and alcohol, he would be able to take care of [Child,]" and, "[t]herefore, there was insufficient evidence to satisfy the clear and convincing requirements . . . to terminate [F]ather's parental rights." *Id.* at 13. Father thus believes that the trial court erred by terminating his parental rights pursuant to 23 Pa.C.S. § 2511(a)(2). *Id.* at 12.

Father's citation to *C.S.* is ironic, given that the remainder of the sentence – and paragraph -- that he chooses not to quote articulates exactly why his claim fails:

> We agree that incarceration of a parent does not, in itself, provide sufficient grounds for termination of parental rights; **however, an incarcerated parent's responsibilities are not tolled during his incarceration.** Parental rights may not be preserved by waiting for some more suitable financial circumstance or convenient time for the performance of parental duties and responsibilities. Further, parental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances.

761 A.2d at 1201 (emphasis added). In truth, this Court's discussion of the appellant's circumstances in *C.S.* is analogous to that of Father's circumstances in the current action:

We note that, even for the sake of his child, apparently Appellant cannot stay out of jail. Further, the trial court concluded, and we find that the record supports its conclusion, that despite his incarceration Appellant has not made every possible effort to stay in touch with his child and to participate, however vicariously, in his child's life.

*Id.*

Father, by his own admission, likewise has failed to stay out of prison, even for Child's sake. *Compare id.*, *with* Docket Numbers CP-51-CR-0010701-2017 and CP-51-CR-0010701-2017, *and* N.T. at 8, 34-35, 52-53, 58, 71-72 (trial court's observation: "What is most compelling is that DHS Exhibits 17 and 19 outline a very lengthy criminal record for [F]ather, much of which resulted in confinement, dating back to as early as 1995."); *see also* PRO, 4/26/2016; PRO, 9/26/2018; SRO, 10/2/2017; SRO, 12/4/2017; PRO, 1/23/2018; PRO, 4/23/2018.

The trial court also concluded – and we find that the competent evidence of record supports its conclusion -- that, despite Father's incarceration, he has not made every possible effort to stay in touch with Child and to participate, however vicariously, in Child's life. *Compare C.S.*, 761 A.2d at 1201, *with* N.T. at 28-35 (Palmer's testimony that Father has sent no cards or letters to Child and has had no contact with Palmer between January 2017 and July 2018), 73 (trial court found: "there's no cards, no letters, no phone calls from [F]ather even inquiring about [Child] since his last visit with her in October of 2016"); *see also B.J.Z.*, 207 A.3d at 921 ("we are limited to determining whether the decision of the trial court is supported by competent evidence").

- 13 -

As for Father's argument that, "once released from prison and having completed his goals regarding parenting and drug[s] and alcohol, he would be able to take care of [Child,]" Father's Brief at 13, we observe: "Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." *In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted). Although the trial court found Father's testimony to be credible, N.T. at 70, including his testimony about his intended release date and entry into an inpatient addiction treatment facility, *id.* at 52, 57, Father's parental rights cannot be preserved while waiting for his release from prison and from drug and alcohol treatment. *See K.Z.S.*, 946 A.2d at 759. Additionally, as the trial court expressed, Father has been "back and forth in jail" – "he was in for a little while, came out for a month, and within a month, was back, incarcerated"; we thus share the trial court's concern, based on the competent evidence of Father's criminal record and his own testimony, that "the conditions that have caused [Child] to be without her father's parental care and control will be remedied, long-term, by [F]ather." N.T. at 72; *see* 23 Pa.C.S. § 2511(a)(2).

For these reasons, the trial court did not err nor abuse its discretion in finding that the statutory grounds for terminating Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2) were established through clear and convincing evidence. *See B.J.Z.*, 207 A.3d at 921.

Father next urges this Court to find that § 2511(b) was not satisfied, because (1) "no expert testimony was introduced regarding parental bonds" and (2) "neither a bond evaluation nor a parenting capacity evaluation was performed." Father's Brief at 15 (unnecessary capitalization omitted). Father thus suggests that termination was improper where "there was little to no evidence regarding the bond between" himself and Child. *Id.*

Father's contention is identical to the argument raised by the mother in *In re J.N.M.*, 177 A.3d 937, 944 (Pa. Super.), *appeal denied*, 183 A.3d 979 (Pa. 2018), that the trial court "erred by terminating rights without a bonding assessment between [the c]hildren [at issue] and [the m]other and [the c]hildren and their foster parents." This Court stated:

> **the orphans' court is not required by statute or precedent to order a formal bonding evaluation be performed by an expert.** While it may be "wise" to conduct a "bonding evaluation" where there is evidence of a bond, in other cases "direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762–63 (Pa. Super. 2008). Furthermore, the orphans' court is free to rely upon the assessments of social workers and caseworkers.

*Id.* at 944-45 (emphasis added) (some internal citations and quotation marks omitted). Thus, contrary to Father's assertion, *see* Father's Brief at 15, the trial court did not err by not ordering a formal bonding evaluation performed by an expert and, instead, relying upon the assessment of a social case manager, Palmer, N.T. at 28-33, 35 – as well as Father's own testimony,

- 15 -

admitting to the lack of bond between himself and Child, *id.* at 55. *See*

*J.N.M.*, 177 A.3d at 944-45; N.T. at 73.

This Court has further explained:

While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, **it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.**

In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the **love, comfort, security, and stability** the child might **have with the foster parent**. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re G.M.S.*, 193 A.3d 395, 401 (Pa. Super. 2018) (emphasis added)

(citations and internal brackets omitted) (some formatting).

In the current action, the trial court found that "there was no bond

between [F]ather and [Child] back in 2016 . . . [a]nd [Fa]ther has indicated

that there isn't a bond with him and [Child] as we sit here today because he

does not know [Child]." N.T. at 73. The trial court additionally held that

Child's foster home "is a stable home for her" and that Child "looks to [her

foster family] for care, comfort, [and] support." *Id.* at 74-75. Thus, for its

analysis pursuant to 23 Pa.C.S. § 2511(b), in addition to its bonding

examination, the trial court also properly considered "intangibles, such as the

love, comfort, security, and stability" Child has "with the foster parent."

*G.M.S.*, 193 A.3d at 401. Accordingly, we conclude that the record supports

the trial court's view that the involuntary termination of Father's parental rights will serve the developmental, physical, and emotional needs and welfare of Child pursuant to Section 2511(b).

Based on the foregoing, we conclude that none of Father's claims raised on appeal merit relief and that the trial court thereby did not abuse its discretion, make an error of law, nor rely upon insufficient evidence by terminating Father's parental rights to Child. ***See B.J.Z.***, 207 A.3d at 921. "If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." ***Id.*** Accordingly, we affirm.

Decree and order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/16/19