J-S10010-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: K.R.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: N.J., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1623 MDA 2021 |

Appeal from the Decree Entered November 8, 2021
In the Court of Common Pleas of York County
Orphans' Court at 2021-0148a

BEFORE:   MURRAY, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED APRIL 20, 2022**

N.J. (Mother) appeals from the involuntary termination of her parental rights to K.R.J. (Child), pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5) and (b) of the Adoption Act.[1]  After careful review, we affirm.

On June 13, 2020, the York County Office of Children, Youth and Families (CYF), received a referral regarding Child, who was just a few days old.  **See** Orphans' Court Opinion, 1/3/22, at 1.  Child was hospitalized in neonatal intensive care after being born addicted to Mother's psychotropic medication and experiencing respiratory issues.  **Id.**  In addition, Mother

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] J.J.O.-C. (Father) consented to termination of his parental rights to Child, and the court entered a corresponding decree on December 10, 2021.  **See** N.T., 12/10/21, at 3-4, 6.

"appeared 'blank'" after Child's birth, and hospital staff expressed concern that Mother lacked any bond with Child. *Id.* at 2.

CYF filed for emergency protective custody based on Mother's mental health issues, which included schizophrenia, limited intellectual functioning, and a history of prior inpatient hospitalizations. *Id.* at 1-2. The court granted relief, and entered a shelter care order on June 23, 2020. Shortly thereafter, CYF filed a dependency petition, which the court granted, following a hearing on June 29, 2020. The court placed Child in kinship care with the goal of reunifying Mother and Child. *Id.* at 2-3; N.T., 11/5/21, at 36. CYF enlisted services from the Nurse Family Partnership, Service Access Management, Family Child Resource, and Pressley Ridge Intensive Family Services to assist Mother with mental health and parenting issues. However, the services "were closed out as unsuccessful for lack of progress and for lack of contact from Mother." Orphans' Court Opinion, 1/3/22, at 7.

On July 1, 2021, CYF petitioned for the involuntary termination of Mother's parental rights. The court held a hearing on November 5, 2021. CYF caseworker, Marla Speir, testified about Mother's failure to visit with Child. N.T., 11/5/21, at 39-42, 57. Mother was initially scheduled for supervised visitation twice a week. *Id.* However, as Mother regularly failed to appear, CYF reduced visits to every other week. *Id.* at 39-42. In May 2021, Mother, without explanation, stopped appearing entirely. *Id.* Nonetheless, CYF continued to schedule visits through mid-November 2021. *Id.*

- 2 -

Ms. Speir further testified about Mother's failure to participate in mental health and parenting services, noting that providers closed out their files because of Mother's lack of progress and repeated failure to appear. *Id.* at 45-48. Ms. Speir noted Mother never progressed to unsupervised visits. *Id.* at 49. She explained that case aides, who monitor visits and are not supposed to intervene, were repeatedly involved because when Mother attended visits, she failed to act appropriately, which resulted in concerns for Child's safety. *Id.* at 49-52. Intervention was necessary even though a parenting skills coach had worked with Mother one-on-one during many of the visits. *See id.* at 20-30, 49-52; N.T., 5/12/21, at 12-21.

The orphans' court terminated Mother's parental rights by decree entered November 8, 2021. Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The orphans' court filed a Rule 1925(a) opinion on January 3, 2022.

Mother raises two issues for review:

1. WHERE THE [ORPHANS'] COURT TERMINATES THE PARENTAL RIGHTS OF A NATURAL PARENT SUFFERING FROM A DEGREE OF MENTAL DISABILITY, INCLUDING SOME COGNITIVE DEFICITS, BORDERLINE INTELLECTUAL FUNCTIONING, AND AN IQ OF 76, AND THE RECORD FROM THE DEPENDENCY CASE PRECEDING THE TERMINATION CASE IS INCORPORATED INTO THE RECORD OF THE TERMINATION CASE, AND WHERE THE RECORD DOES NOT REFLECT THAT THE COUNTY CHILDREN AND YOUTH AGENCY MADE REASONABLE ACCOMMODATION FOR THE NATURAL PARENT TO PARTICIPATE AND RECEIVE THE BENEFITS FROM THE SERVICES OFFERED ON EQUAL FOOTING WITH PERSON[S] WHO ARE NOT DISABLED,

SHOULD THE [ORPHANS'] COURT'S TERMINATION OF PARENTAL RIGHTS BE REVERSED?

2. WHERE THE [ORPHANS'] COURT TERMINATES PARENTAL RIGHTS OF A NATURAL PARENT WITHOUT A RECORD THAT SUPPORTS A FINDING THAT TERMINATION WOULD BEST SERVE THE INTERESTS OF THE CHILD, SPECIFICALLY REGARDING THE EXISTENCE OF A BOND BETWEEN THE CHILD AND PARENT, SHOULD THE [ORPHANS'] COURT'S TERMINATION OF PARENTAL RIGHTS BE REVERSED?

Mother's Brief at 4.

We begin by recognizing:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations omitted).

Section 2511 of the Adoption Act governs the termination of parental rights, and requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between

parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Interest of S.S.*, 252 A.3d 681, 686 (Pa. Super. 2021) (citations omitted).

Here, the orphans' court found the evidence supported termination pursuant to Sections 2511(a)(1), (2), (5) and (b), which provide:

**(a) General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

* * *

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental,

physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5) and (b).

In her first issue, Mother does not claim that CYF failed to establish grounds for termination under § 2511(a). Rather, Mother argues termination was not warranted because CYF failed to accommodate her disabilities pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C.A. § 12131, *et seq.* Mother contends:

The termination of [Mother's] parental rights in the minor child should be reversed because [CYF] did not reasonably accommodate [Mother's] disabilities during the dependency case, and the dependency case record was incorporated into the termination case record.

* * *

Throughout the companion dependency case, CYS was aware of the extent and nature of [Mother's] mental disabilities. Throughout the companion dependency case, CYS made no accommodations for [Mother's] mental disabilities, including but not limited to her cognitive disabilities.

Mother's Brief at 10.

Mother's argument is undeveloped. She does not cite legal authority to support her allegation of an ADA violation.[2] *See id.* at 8-11. While Mother generally claims CYF failed to provide reasonable accommodations, Mother does not elaborate. She does not cite anywhere in the record where she requested accommodations and/or that CYF denied accommodations. *Id.*

> When an appellant cites no authority supporting an argument, this Court is inclined to believe there is none. *See* Pa. R.A.P. 2119(a) and (b) (requiring an appellant to discuss and cite pertinent authorities); *Commonwealth v. Antidormi*, 84 A.3d 736, 754 (Pa. Super. 2014) (finding issue waived because the appellant "cited no legal authorities nor developed any meaningful analysis").

*Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 781 (Pa. Super. 2015). It is not our role to develop an appellant's argument. *See Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007) (*en banc*); *see also Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) ("[I]t is an appellant's duty to present arguments that are sufficiently developed for our review."); *Bombar v. West Am. Ins. Co.*, 932 A.2d 78, 94 (Pa. Super. 2007). Mother has not presented a cogent argument on this issue; thus it is waived.

_____

[2] The record shows Mother received mental health referrals to at least two providers, and parenting service referrals from an additional three providers. **All** of the referrals were unsuccessful due to Mother's lack of participation. *See* Orphans' Court Opinion, 1/3/22, at 7-9; N.T. 11/5/21, at 45-48. *See also*, N.T., 5/12/21, at 12-21 (detailing CYF's efforts in arranging one-on-one parenting coaching for Mother).

Waiver notwithstanding, Mother would not be entitled to relief. In ***In the Interest of J.J.L.***, 150 A.3d 475 (Pa. Super. 2016), a mother alleged the court erred in terminating her parental rights where, "the agency failed to modify its policies, practices, and procedures to accommodate mother's intellectual disability, thereby depriving her of meaningful and equal access to the agency's reunification services in contravention of the [ADA.]" ***J.J.L.***, 150 A.3d at 479. This Court disagreed. We held that "the ADA is not applicable to a proceeding regarding the termination of parental rights under the Adoption Act." ***Id.*** at 482 (citation omitted). We explained:

> Assuming *arguendo* that Mother falls within the ADA's definition of a "qualified individual with a disability," the relevant inquiry would become whether CYS provided her with reasonable accommodations to allow her to participate and receive the benefits from the services offered on an equal footing with persons who are not disabled. … As previously explained the trial court's focus is on the child's best interests. To accept Mother's assertion would require the trial court and this Court to ignore the best interests of the Child and focus instead on the needs of Mother. This we cannot do. ***See In re J.S.W.***, 438 Pa.Super. 46, 651 A.2d 167 (1994) (stating "[o]nce a child is adjudicated dependent, the issues of custody and continuation of foster care are determined according to [the] child's best interests."). Since the ADA adds nothing to the trial court's fulfillment of its mandates … we find its application is not properly before this Court for review.
>
> We recognize that an agency must put forth a good faith effort in making services available to a parent. ***In re Adoption of J.J.***, 511 Pa. 590, 515 A.2d 883 (1986). To the extent Mother complains that the trial court erred in finding CYS put forth a good faith effort in providing services, such a contention is belied by the record. Moreover, Mother fails to even explain what services were denied or how the services provided were not on an equal footing with nondisabled individuals. A parent, whether disabled or not, must be able to meet the irreducible minimum parental requirements contained in the Juvenile Act for return of a child in

CYS's care. If a parent cannot or will not meet her irreducible minimum parental responsibilities, the needs of the child must prevail over the rights of the parent. We do not believe the ADA requires that a disabled parent be offered a plan the parent can meet if such plan would then be insufficient to address the irreducible minimum parental responsibilities.

***Id.*** at 481-82 (some citations omitted).

We have also explained that "reasonable efforts by an agency at reunification are not required for termination of parental rights." ***Adoption of A.L.E.***, 2019 WL 2525844, at *18 (Pa. Super. Jun. 19, 2019) (unpublished memorandum) (citing ***J.J.L.***, ***supra*** at 482).[3]

By the time a termination petition has been filed, it is too late for a parent to argue that a child welfare agency failed to make sufficient or reasonable efforts to reunite the parent and children. Such an argument should have been made in the dependency court:

Section 6351 details the required findings and determinations that a Juvenile Court must make in regard to dependent children, ... Section (f) speaks to the "matters to be determined at [a] permanency hearing," including "[w]hether reasonable efforts were made to finalize the permanency plan in effect." [42 Pa.C.S.A.] § 6351(f)(5.1).

[***In re***] ***D.C.D.***, 105 A.3d [662,] 673 [(Pa. 2014)]; ***see also id.*** at 677 (Eakin, J., concurring) ("Neither § 2511 of the Adoption Act nor § 6531 of the Juvenile Act preclude a court from ordering the termination of parental rights where a child-welfare agency fails to provide reasonable efforts to promote reunification. Incorporating a reasonable-efforts requirement at the termination-of-parental-rights stage would do nothing more than improperly punish children, as their placement in foster care

---

[3] Pa.R.A.P. 126 permits citation to unpublished decisions filed after May 1, 2019. ***See*** Order Amending Rule 126 of the Pennsylvania Rules of Appellate Procedure, No. 278 (Pa. 2019).

would be unjustly lengthened solely as a result of an agency's deficiencies." (footnotes omitted)).

*A.L.E.*, 2019 WL 2525844, at *18.

Mother did not dispute her family services plans or appeal the dependency review orders. *See* N.T., 11/5/21, at 36-38. We are unconvinced by Mother's unsupported argument that incorporation of the dependency proceedings in the termination proceedings allows her to raise an ADA claim at this stage. Mother's ADA claim does not merit relief. *J.J.L.*, *supra* at 482.

Although Mother does not challenge the orphans' court determination regarding grounds for termination under § 2511(a)(1), (2), or (5), we address subsection 2511(a)(1). *See Interest of A.M.*, 256 A.3d 1263, 1270 (Pa. Super. 2021) (we need only agree with the court as to one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm).

To meet the requirements of this subsection, "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Adoption of B.G.S.*, 245 A.3d 700, 706 (Pa. Super. 2021) (citation omitted). The court must consider "the parent's explanation for his or her conduct" and "the post-abandonment contact between parent and child." *Id.* (citation omitted). A parent "does not perform his or her parental duties by displaying a merely passive interest in the

development of a child." ***In re Adoption of B.G.S.***, 240 A.3d 658, 665 (Pa. Super. 2020).

Child was adjudicated dependent shortly after her birth in June 2020 and Mother made no progress to remedy the conditions that led to Child's removal. Mother failed to engage in mental health and parenting services, and visited only sporadically with Child. She last visited Child on May 18, 2021, and did not explain why she stopped visiting. When questioned at the hearing, Mother stated:

> Okay, I've been having a lot of problems with family issues because — like, I lost a family member, like a friend that's like a family member to me. And I've been going through a lot, and I've been going like, into the hospital to get help and stuff with my medicine so I can get better and feel better so I can at least try to get her back.

N.T., 11/5/21, at 64.

> As we have explained:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty ... requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

***In Re Q.R.D.***, 214 A.3d 233, 241 (Pa. Super. 2019) (citations omitted).

The record confirms Mother failed to progress with her family service plans pertaining to her mental health and parenting capabilities, and maintained only a "passive interest" in Child by occasionally visiting Child. N.T., 11/5/21, at 62-63. Thus, the record supports the termination under subsection 2511(a)(1).

In her second issue, Mother contends the orphans' court erred in finding termination served Child's needs and welfare. She maintains there "does not exist clear and convincing evidence of a lack of bonding in this case. Moreover, in this case, the bonding process here presumably was inhibited by the fact that the minor child was taken from [Mother] at birth." Mother's Brief at 12.

With respect to Section 2511(b), "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re Adoption of A.H.*, 247 A.3d 439, 444 (Pa. Super. 2021) (citations omitted). The court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* at 445 (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *Id.* (citations omitted).

Here, the orphans' court explained:

In regard to 23 Pa.C.S.A. § 2511(b), it is clear from the record that CYF offered clear and convincing evidence for the Court's

consideration that the developmental, physical, and emotional needs and welfare of [Child are] best served by terminating parental rights. [Child] has been with the kinship resource since she was about two weeks old. The kinship resource works for a school system as a personal care assistant for autistic children. [Child] is bonded with the kinship resource. The CYF caseworker, Marla Speir, testified that Child does not have a bond with the Mother whom she has not seen in six months, and the child considers the resource parent to be her mother.

BY [Counsel for CYF]:

Q. Does the minor child appear to be safe in the current foster home setting?

A. Yes.

Q. Based upon your review of the file, based upon your interaction with the mother, as well as the minor child and the resource family, does the minor child have any type of parental bond with the mother?

A. With the mother, no. She hasn't seen her since May 18th.

Q. And based upon your review of the file and interaction with the family, does the minor child appear to be appropriately bonded to the resource?

A. She is bonded to the resource mother. I would say she considers her mother. She's had her since she was about two weeks old.

Q. Do we have any indication the minor child has inability to bond with parental type figures?

A. No.

Q. If you know, is the minor child beginning to talk now?

A. Yes.

Q. Do you know what she calls the resource parent?

- 13 -

A. Um-hum. Mama, mommy or mom.

Attorney Yost, legal counsel for the minor child, testified that [Child] is bonded not only to the foster mom, but to the other children in the house as well. [Child] is now about eighteen months old. [Child] is on track developmentally and attends Early Intervention and is walking and running. She is up to date on her immunizations. She is in a safe environment with the kinship resource with whom she has developed a parental bond.

Orphans' Court Opinion, 1/3/22, at 15-16 (record citations omitted).

Again, the record supports the orphans' court's conclusion. Child was removed from Mother's care shortly after birth, and Mother has visited Child only sporadically. At the time of the termination hearing, Mother had not visited Child for six months. N.T., 11/5/21, at 40-43. Conversely, Ms. Speir testified Child has resided in the same kinship, pre-adoptive home since Child's placement in June 2020, and Child is closely bonded to her foster mother. **Id.** at 44-45, 53-54, 66. Our Supreme Court has stated, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents," and "must keep the ticking clock of childhood ever in mind." **In re T.S.M.**, 71 A.3d at 268-69. Accordingly, we discern no error.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/20/2022