J-S66031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.J.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: B.B.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 412 MDA 2016 |

Appeal from the Decree February 12, 2016
In the Court of Common Pleas of Dauphin County
Orphans' Court at No(s):  85-AD-2015


BEFORE:  BOWES, PANELLA, JENKINS, JJ.

MEMORANDUM BY JENKINS, J.:                **FILED OCTOBER 06, 2016**

B.B.L. ("Mother") appeals from the decree entered February 12, 2016,[1] in the Court of Common Pleas of Dauphin County, Orphan's Court, granting the petition of the Dauphin County Children and Youth Services Agency (the "Agency") and involuntarily terminating her parental rights to her dependent child, J.J.L. ("Child"), a male born in July of 2014, pursuant to the Adoption Act, 23 Pa.C.S. §§ 2511(a) (2), (5), (8), and (b).[2]  In addition, on May 24,

---

[1] While the decree was dated February 11, 2016, notice pursuant to Pa.R.C.P. 236 was not provided until February 12, 2016. **See Frazier v. City of Philadelphia**, 735 A.2d 113, 115 (Pa. 1999) (holding that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given").

[2] By separate decree entered the same date, the court additionally terminated the parental rights of unknown father.  No appeal was filed on behalf of any unknown father.  Further, the parental rights of legal father,
*(Footnote Continued Next Page)*

2016, Mother's counsel filed a petition to withdraw, together with an

**Anders**[3] brief, averring the within appeal is frivolous. After careful review,

we affirm and grant counsel's petition to withdraw.

The trial court summarized the relevant procedural and factual history,

in part, as follows:

> Mother first became involved with [the Agency] after the agency received a referral from Hershey Medical Center on August 1, 2014. The referral expressed concerns regarding the parents' ability to care for the child's basic needs as they needed continued guidance on basic parenting skills. The hospital staff reported that Mother needed repeated instruction on how to diaper, hold and feed her infant son, and was unable to answer questions about basic infant care. In addition, there were concerns regarding Mother's intellectual disabilities and concerns for both parents' mental health.
>
> On August 5, 2014, the Agency developed a Safety Plan wherein Mother and legal father, [D.L.], would reside with paternal grandparents, [K.L.] and [C.L.], who became 24-hour caretakers to assist the parents in caring for [Child]. The Agency parenting educator, Carianne Bardine, went out to the home on August 8, 2014 and worked with Mother for approximately five (5) hours. At the end of the session, Ms. Bardine concluded that it would not be possible for Mother to learn the skills needed to care for [Child] prior to the end of the Safety Plan, which expired on August 15, 2014.
>
> The Agency filed a Dependency Petition on August 11, 2014, as [K.L.] and [C.L.] were unable to continue as 24-hour

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

D.L., were terminated by decree entered January 27, 2016, pursuant to petition to confirm consent to adoption. D.L. has not filed an appeal and is not a party to this appeal.

[3] **Anders v. California**, 386 U.S. 738 (1967).

caregivers. In addition, [K.L.] expressed concerns regarding Mother's ability to care for [Child]. On that date, J.J.L. was placed in the foster home of [R.F.] and [L.E.] A shelter hearing was held on August 14, 2014 wherein Mother and [D.L.] were present. Following the shelter care hearing, Mother refused to sign release forms related to services for [Child], and also had difficulty understanding the reasons for the Agency's involvement and stated that she had not been told the reasons despite being present at the shelter hearing. Thereafter, the parents began attending the Samara Parenting Program on Tuesday and Thursday evenings beginning on August 24, 2014.

An adjudication and disposition hearing was held on August 27, 2014, at which time the Court adjudicated [Child] dependent and placed him in the Agency's care and custody. In addition, Mother and [D.L.] were ordered to obtain a psychological evaluation to address their ability to parent, and to include IQ testing and recommendations regarding appropriate methods to teach parenting skills.[4] At said hearing, the Agency established a reunification plan, which required both Mother and [D.L.] to comply with specific objectives.

The Agency referred the parents for family reunification services on October 1, 2014. These services were declined at the time due to the parents' participation in the Samara Parenting Program. Thereafter, the parents began supervised visitation at the Agency three (3) times a week for sessions two (2) hours in length. Reunification services were not requested at the time Samara closed their services.

In June of 2015, Mother indicated that she wanted reunification services through the Agency, which were

---

[4] During the evaluation, Mother tested within the "mild range of intellectual disability," scoring the equivalent to a Weschler IQ of 54, which "ranks her in the lowest 1% of adults" and equates to "a mean age equivalent of 10.3 years." Exhibit 16, Hempfield Behavioral Health Psychological Evaluation, at 4 (unpaginated); N.T., 1/28/15, at 52. Mother was diagnosed with Depression NOS and Mild Intellectual Disability. Exhibit 16, at 6. Mother additionally tested in the "very high risk range on three of the five scales and in the moderate risk in two others" on the adult adolescent parenting inventory which serves as a predictor of child abuse or neglect. N.T., 1/28/15, at 54; Exhibit 16, at 3.

subsequently ordered by the court. At a family engagement meeting on August 3, 2015, Mother formally stated her intent to consent to adoption. Prior to the September 2, 2015 permanency review hearing, Mother signed a form consenting to adoption, and the Agency goal was changed from reunification to adoption by order of court. Mother subsequently revoked her consent to adoption on October 2, 2015. Despite the revocation of consent, there was no appeal of the Agency's goal change to adoption.

On November 16, 2015 the Agency filed a Petition for Involuntary Termination of Parental Rights ("Petition"). The statutory grounds for which the agency based its Petition are 23 Pa.C.S.[] § 2511(a)(2), § 2511(a)(5), § 2511(a)(8), and § 2511(b). Mother filed a Motion for Disqualification and Recusal on December 14, 2015, which was subsequently granted by the Honorable John F. Cherry. Thereafter, this case was assigned to the Honorable William T. Tully. . . .

Trial Court Opinion, 4/21/16, at 1-4 (citations to record omitted).

The trial court conducted hearings on the Petition on January 26, 2016 and February 4, 2016. Mother testified on her own behalf. Additionally, the trial court heard from Agency workers Susan Krawchuk and Morgan Goodling. Further, counsel stipulated to the prior testimony of Dr. Howard S. Rosen regarding his November 22, 2014 evaluation of Mother.[5]

By decree entered February 12, 2016, the trial court terminated Mother's parental rights to Child. Mother, through appointed counsel, filed a timely notice of appeal on March 11, 2016. Mother did not file a concise statement of errors complained of on appeal with her notice of appeal, as

---

[5] This testimony was taken on January 28, 2015 at a permanency review hearing.

required by Pa.R.A.P. 905(a)(2) and Pa.R.A.P. 1925(a)(2)(i). The notice of appeal filed by appointed counsel on behalf of Mother indicated that, as he concluded there are no non-frivolous issues to be raised on appeal, he intended to file an *Anders* petition and brief, and he was not required to file a concise statement. *See* Pa.R.A.P. 1925(c)(4) (in a criminal case, counsel may file of record and serve on the judge a statement of intent to file an *Anders/McClendon* brief in lieu of filing a statement); *see also Interest of J.T.*, 983 A.2d 771 (Pa. Super. 2009) (holding that the *Anders* procedure set forth in Rule 1925(c)(4) is proper in a termination of parental rights case). Counsel filed an *Anders* petition and brief on May 24, 2016.

On appeal, Mother raises the following issues for our review:

1. Did the trial court abuse its discretion, or commit an error of law by ordering the termination of mother's parental rights, although the agency failed to modify its policies, practices, and procedures to accommodate mother's intellectual disability, thereby depriving her of meaningful and equal access to the agency's reunification services in contravention of the Americans with Disabilities Act of 1990?

2. Did the trial court abuse its discretion, or commit an error of law by ordering the termination of mother's parental rights, although the agency failed to make reasonable efforts to enable mother to achieve timely reunification with her child?

*Anders* Brief, at 4.

When counsel files an *Anders* brief, this Court may not review the merits of the appeal without first addressing counsel's request to withdraw. *Commonwealth v. Washington*, 63 A.3d 797, 800 (Pa.Super.2013); *see also Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa.Super.2005)

- 5 -

(stating, "[w]hen faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw[]")(citation omitted). In *In re V.E.*, this Court extended the *Anders* principles to appeals involving the termination of parental rights. 611 A.2d 1267, 1275 (Pa.Super.1992). It follows that counsel appointed to represent an indigent parent on a first appeal from a decree involuntarily terminating parental rights may petition this Court for leave to withdraw representation and submit an *Anders* brief. *In re S.M.B.*, 856 A.2d 1235, 1237 (Pa.Super.2004).

To withdraw, pursuant to *Commonwealth v. Millisock*, 873 A.2d 748 (Pa. Super. 2005) and its progeny, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [Anders] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa.Super.2013) (*en banc*) (citing *Commonwealth v. Lilley*, 978 A.2d 995, 997 (Pa.Super.2009)). *See also Commonwealth v. Orellana*, 86 A.3d 877, 880 (Pa.Super.2014). We further review counsel's *Anders* brief for compliance with the requirements set forth in *Commonwealth v. Santiago*, 978 A.2d 349 (Pa.2009).

> [W]e hold that in the *Anders* brief that accompanies court-appointed counsel's petition to withdraw, counsel must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.* at 361.  "Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous."  ***Commonwealth v. Goodwin***, 928 A.2d 287, 291 (Pa.Super.2007) (*en banc*) (quoting ***Commonwealth v. Wright***, 846 A.2d 730, 736 (Pa.Super.2004)).

Counsel has satisfied the first requirement of ***Anders*** by filing a motion to withdraw, wherein he asserts that he has made a conscientious review of the record and determined the appeal would be frivolous. Likewise, counsel has satisfied the second requirement by filing an ***Anders*** brief that complies with the requirements set forth in ***Santiago, supra***. With respect to the third requirement, counsel has attached to the motion to withdraw a copy of the letter sent to Mother advising her of her rights, and enclosing a copy of the ***Anders*** brief.  Hence, we conclude that counsel has complied with the ***Anders*** requirements and proceed to a review of the merits.

We first address Appellant's claim under the Americans with Disabilities Act ("ADA").[6] 42 U.S.C. § 12132 provides:

Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

A qualified person with a disability is defined as follows:

The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). A public entity includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(b).

Further, 28 C.F.R. § 35.130 states, in part:

(a) No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.

(b)(1) A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability—

_____

[6] Mother avers that she is "attacking the credibility" of the evidence in terminating parental rights, as opposed to attempting to litigate a claim of discrimination under the ADA. *Anders* Brief, at 24.

(i) Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service;

(ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

(iii) Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others[.]

In examining the ADA, while we have not previously examined its applicability to the Adoption Act and the termination of parental rights, we have held that the ADA is not applicable to a dispositional review proceeding under the Juvenile Act, specifically 42 Pa.C.S. § 6351(e). *In re A.P.*, 728 A.2d 375, 378–80 (Pa.Super.1999).[7] In so holding, we noted the importance of the child's best interests with regard to a dispositional review. In reaching this conclusion, we stated:

Assuming arguendo that Mother falls within the ADA's definition of a "qualified individual with a disability," the relevant inquiry would become whether CYS provided her with reasonable accommodations to allow her to participate and receive the benefits from the services offered on an equal footing with persons who are not disabled. In the context of a disposition review proceeding under 42 Pa.C.S.[] § 6351(e), we find such an inquiry to be untenable. As previously explained the trial court's focus is on the child's best interests. To accept Mother's assertion would require the trial court and this Court to ignore

_____

[7] In *A.P.*, Mother, appealed a goal change from reunification to adoption, asserting that the Agency failed to comply with the ADA and accommodate her mental illness. 728 A.2d at 378.

the best interests of the Child and focus instead on the needs of Mother. This we cannot do. ***See In re J.S.W.***, [] 651 A.2d 167 ([Pa.Super.]1994) (stating "[o]nce a child is adjudicated dependent, the issues of custody and continuation of foster care are determined according to [the] child's best interests."). Since the ADA adds nothing to the trial court's fulfillment of its mandates pursuant to § 6351(f) of the Juvenile Act, we find its application is not properly before this Court for review.

We recognize that an agency must put forth a good faith effort in making services available to a parent. ***In re Adoption of J.J.***, [] 515 A.2d 883 ([Pa.]1986). To the extent Mother complains that the trial court erred in finding CYS put forth a good faith effort in providing services, such a contention is belied by the record. Moreover, Mother fails to even explain what services were denied or how the services provided were not on an equal footing with nondisabled individuals. A parent, whether disabled or not, must be able to meet the irreducible minimum parental requirements contained in the Juvenile Act for return of a child in CYS's care. If a parent cannot or will not meet her irreducible minimum parental responsibilities, the needs of the child must prevail over the rights of the parent. We do not believe the ADA requires that a disabled parent be offered a plan the parent can meet if such plan would then be insufficient to address the irreducible minimum parental responsibilities.

Congress enacted the ADA to eliminate discrimination and to create causes of action for qualified people who have faced discrimination. ***See*** 42 U.S.C. § 12101(b). We do not believe Congress intended to change the obligations imposed by unrelated statutes. Mother may have a separate cause of action against CYS pursuant to the ADA; however, such claim does not form a basis upon which to attack an order entered under § 6351(g) of the Juvenile Act. The complex issues associated with a claim of discrimination under the ADA are best resolved by resort to a separate suit in another forum.

***Id.*** at 378-79.

Similarly, in the instant matter, the ADA is not applicable to a proceeding regarding the termination of parental rights under the Adoption Act, 23 Pa.C.S. §§ 2101-2938. Addressing such a claim in the context of the

ADA would, as we recognized and acknowledged in **A.P.**, *supra*, require the trial court to shift its attention from the needs of the Child to those of the Mother. As suggested, Mother's claims related to any alleged discrimination are more appropriately handled in a suit separate from the termination of her parental rights, and not as a basis to attack the determination regarding termination of parental rights.[8] Hence, this claim is without merit.

Even if we were to overlook this reasoning, we would find that the record supports accommodation to Mother by the Agency. The Agency's parenting educator spent approximately five hours working one-on-one with Mother where she lived at the home of paternal grandparents, who were serving as twenty-four hour caregivers at the time. N.T., 1/26/16, at 48-49, 51. Additionally, after the Agency caseworker spent two hours reviewing the family service plan with Mother, the Agency consulted Lancaster-Lebanon IU-13 for assistance in "simplify[ing] the language." **Id.** at 51-52, 75-76. As a result and in response, Mother's caseworker and a special education teacher met with and reviewed Mother's family service plan and goals with her. **Id.** at 52-53, 76-77. Subsequently, the Agency referred Mother for family reunification services. However, such services were declined and were not immediately requested when the self-obtained services Mother was receiving were terminated. N.T., 1/26/16, at 57-59, 81-82; N.T., 2/4/16, at

---

[8] We note that Mother has filed an ADA discrimination complaint. Exhibit 19, ADA Discrimination Complaint Form.

97-99. Moreover, when Mother requested these services several months later, and the Agency made a referral, Mother expressed a desire to voluntarily consent to adoption. N.T., 2/4/16, at 97-99, 100-01.

We next turn to whether reasonable efforts were made at reunification of Mother and Child. In so doing, we note that our Supreme Court has held that Section 6351(f) does not require reasonable efforts as it relates to termination of parental rights. *In re D.C.D.*, 105 A.3d 662, 673-74 (Pa.2014).

> [W]hile reasonable efforts should be considered and indeed, in the appropriate case, a trial court could insist upon their provision, we hold that nothing in the language or the purpose of Section 6351(f)(9) forbids the granting of a petition to terminate parental rights, under Section 2511, as a consequence of the agency's failure to provide reasonable efforts to a parent.

*Id.* at 675. Thus, we also find this claim to be without merit.

Based on the foregoing independent analysis of the trial court's termination of Mother's parental rights, we agree with counsel for Mother that the within appeal is wholly frivolous.[9] As such, we affirm the decree of the trial court and grant counsel's petition to withdraw.

Decree affirmed. Petition to withdraw granted.

---

[9] Further, we note that our independent review of the record did not reveal any additional, non-frivolous issues overlooked by counsel, this includes any claims as to sufficiency of the evidence to terminate her parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(2), (5), (8), and (b). *See Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa.Super.2015), citing *Commonwealth v. Goodwin*, 928 A.2d 287 (Pa.Super.2007) (*en banc*).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/6/2016