J-S04003-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.U., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2464 EDA 2022 |

Appeal from the Decree Entered September 6, 2022
In the Court of Common Pleas of Philadelphia County
Juvenile Division at CP-51-AP-0000477-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: Y.M.U., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2465 EDA 2022 |

Appeal from the Decree Entered September 6, 2022
In the Court of Common Pleas of Philadelphia County
Juvenile Division at CP-51-AP-0000479-2022

BEFORE: MURRAY, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.: **FILED MARCH 28, 2023**

M.C. (Mother) appeals from the decrees involuntarily terminating her parental rights to her sons, A.U. and Y.M.U. (Children). We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

A.U. was born in June 2015 and Y.M.U. was born in January 2017. Children have lived together in a pre-adoptive home with their foster mother since March 2018.

On August 11, 2022, DHS filed a petition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1),(2),(5),(8) and (b).[1] The trial court held a hearing on September 6, 2022. At that time, A.U. was seven years old and Y.M.U. was five years old.[2]

Caseworker Alexis Hylton testified that when A.U. was born in 2015, Mother admitted to having substance abuse and mental health issues. N.T., 9/6/22, at 11. DHS obtained an order of protective custody for A.U. and he was adjudicated dependent. *Id.* A.U. remained in care until February 2017, when he was reunited with Mother, who had given birth to Y.M.U. a month prior. *Id.* at 12. In March 2018, Children came into the care of DHS after Children's father "left them with a previous paramour," who "reported and sent [C]hildren to DHS." *Id.* at 12-13. DHS was unable to locate Mother. *Id.* at 13. DHS placed Children with their foster mother, where Children have

---

[1] Children's father died in January 2020 and any putative fathers are unknown. *See* Notice of Compliance with Rule of Appellate Procedure 1925(a), 11/2/22, at 1 n.1; *see also* N.T., 9/6/22, at 30. Mother testified that Children's father died after being hit by a car and had "tried to kill me twice that night." *Id.* at 121. Mother admitted stabbing Children's father. *Id.* at 122. The caseworker, Ms. Hylton, testified that after being stabbed, Children's father "was walking to the hospital, which ultimately resulted in him being hit by a car, [and] pass[ing] away from his injuries." *Id.* at 30.

[2] Children were represented by a guardian *ad litem* and legal counsel. *See* N.T., 9/6/22, at 5.

lived for the past five years. *Id.* at 13, 70. Mother has had supervised visits with Children, but no unsupervised visits. *Id.* at 78-79.

Ms. Hylton described Mother's contact with the agency as "sporadic." *Id.* at 18, 35. She testified that Mother has been "diagnosed with PTSD, anxiety, depression, and bipolar disorder." *Id.* at 25. Mother's substance abuse included cocaine, heroin, PCP, and marijuana. *Id.* at 19. Ms. Hylton stated, "throughout the duration of the case, Mother had been transient, moving from home to home or in the shelter[, but] since the last year, she has stabilized." *Id.* at 22. Ms. Hylton explained that Mother is currently "confined to a wheelchair" and resides in "a living facility for disabled patients." *Id.* at 23-24. Mother requires daily assistance from an aide and receives social security disability benefits. *Id.* at 25, 97.

Ms. Hylton further testified that Mother is unpredictable, and Children "are very, very straightforward with stating they do not want to do visits. That they do not want to go to visits." *Id.* at 29. According to Ms. Hylton, "the interaction is not a good interaction with Mo[ther] and [C]hildren. [C]hildren do not bond with her. They do not want to be around her." *Id.* at 41. Ms. Hylton continued:

> [Children] have remained consistent with stating that they do not want to do visits. When the visits occur, [C]hildren do not listen to [Mother]. The [foster] parent has to really have a conversation with them.
>
> [She says,] "You have to do the visit for an hour. I'll pick you up." [Mother] has to have cookies or some sort [of treat] and says, "Hey. Come over here and play with me. I have this." Or,

> "Come over and do this. I have this." It's more of a bribery interaction which they wish not to continue.
>
> They've done it for awhile. They abide. They obliged for awhile, and now they just don't care.

N.T., 9/6/22, at 42.

Ms. Hylton testified that Mother had supervised visitation with Children for years but was "discharged unsuccessfully from reunification coaching … because there was no progress." *Id.* at 42-43. Ms. Hylton reiterated that Children did not have a bond with Mother. *Id.* at 61-63. She averred that termination was best for Children and would not cause Children "any irreparable emotional harm[.]" *Id.* at 61. Ms. Hylton also testified that Children's foster mother meets their needs and has a "very loving" relationship with Children. *Id.* at 66. Children consistently refer to foster mother as their mother. *Id.* at 71.

Alicia Adebiyi, the reunification coach, testified to being involved in the case since 2019. *Id.* at 100. Ms. Adebiyi expressed concern for Children's safety with Mother, and most recently, Mother's abdication of parenting responsibilities to her aide. For example, Ms. Adebiyi relayed that Mother told her aide to fix Children's meals when Mother had the capability to do it. *Id.* at 102. Ms. Adebiyi also testified that Mother gave the Children toy guns during visits "after being asked several times" not to give them toy guns. *Id.* at 102. She opined "there is no affection on [Children's] part" during their visits with Mother. *Id.* at 104. Ms. Adebiyi also averred that Children do not have a parent/child bond with Mother. *Id.* at 106-07.

Mother testified to being confined to a wheelchair. *Id.* at 110. She stated she would be getting an electric wheelchair, and would have help caring for Children from her aide, her girlfriend, a cousin, and another individual who lives in her building. *Id.* at 112. Mother stated that she loves Children "more than anything," and helping care for Children was "what my aide does." *Id.* at 111, 123.

Elizabeth Hess, Mother's aide, testified that she takes Mother to appointments, prepares meals, performs housework, and helps with "anything [Mother] needs assistance with." *Id.* at 125. Regarding Children, Ms. Hess testified that Mother "would be primary," but Ms. Hess would help care for Children. *Id.*

Children's legal counsel, Attorney Lue Friarson, stated that she spoke separately with A.U. and Y.M.U., and they "don't know the word 'adoption.'" *Id.* at 79. She relayed that each child "said that they live with their mother. That [foster mother] is their mother." *Id.* Children indicated "they will be staying with [foster mother] until they grow up," and "each child said they do not want to leave [foster mother's pre-adoptive] home." *Id.*

The trial court terminated Mother's parental rights pursuant to Section 2511(a)(1), (2) and (b). Mother timely filed notices of appeal and concise statements of errors at the Children's separate dependency dockets.[3] The

---

[3] This Court consolidated the appeals on December 29, 2022.

trial court responded that it had "stated on the record the reasons" for terminating Mother's parental rights. *See* Notice of Compliance with Rule of Appellate Procedure 1925(a), 11/2/22, at 1-2. The trial court stated it would submit a supplemental opinion if this Court "believes the trial court's statements on the record do not adequately address any issue on appeal." *Id.* at 2. We have not requested a supplemental opinion because our review reveals the trial court adequately addressed Mother's issues.

Mother presents the following issues:

A. Whether the Court erred in terminating parental rights of [Mother].

B. Whether the Court erred in changing the goal to adoption.

C. Whether the Trial Court did err in terminating [M]other's parental rights since the Department of Human Services did not meet its burden by clear and convincing evidence of showing that the best interest of the children was served by terminating [M]other's parental rights pursuant to Section 2511(b) of the Adoption Act.

D. Whether the Trial Court abused its discretion and committed legal error in terminating Mother's parental rights under 23 PA.C.S.A. § 2511(b) because the Department of Human Services did not present competent evidence regarding the nature of the bond between parent and [C]hildren in order to assess the best interest of the [C]hildren.

E. Whether the errors committed by the court below deprived [Mother] of her rights to due process and equal protection under the law.

F. Whether the errors committed by the court below violated [Mother's] rights under [the] Americans With Disabilities Act of 1990.

Appellant's Brief at 3.

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination, followed by the needs and welfare of the child. *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Id.*

Termination is proper if the petitioner demonstrates by clear and convincing evidence that the parent cannot provide basic needs and a structured environment for the child, and the parent's neglect or incapacity cannot or will not be remedied. *See generally In re S.P.*, 47 A.3d 817 (Pa. 2012). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

Further, this Court must "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re J.W.B.*, 232 A.3d 689, 695 (Pa. 2020) (citation omitted). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id*. (internal citation omitted). We have emphasized our deference to trial courts, which often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

Although Mother presents six issues, she presents a single argument without separate headings and discussion. *See* Appellant's Brief at 7-13; *see also* Pa.R.A.P. 2119(a) (providing the "argument shall be divided into as many parts as there are questions to be argued"); *see also* DHS Brief at 37 (stating Appellant's brief "does not comply with Pa.R.A.P. 2119 because her [a]rgument is not divided into subparts that align with the questions presented[.]").

In her first issue, Mother generally asserts the trial court "erred in terminating parental rights." Appellant's Brief at 3. This issue lacks merit because it is undeveloped and subsumed by Mother's other issues.

In her second issue, Mother claims the trial court "erred in changing the goal to adoption." *Id.* This issue also lacks merit. Mother filed notices of appeal from the decrees terminating her parental rights to each child at the above-captioned **adoption** dockets; Mother did not file notices of appeal from

the orders changing the Children's permanency goals to adoption at the **dependency** dockets (CP-51-DP-1685-2015 and CP-51-DP-469-2018). Moreover, Mother has abandoned this issue, as she does not mention the goal change in her argument. *Id.* at 7-13.

In her third and fourth issues, Mother assails the trial court's finding that termination was in the Children's best interests pursuant to Section 2511(b).[4] The statute provides: "The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b).

When considering Section 2511(b), "the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *In re L.W.*, 267 A.3d 517, 523 (Pa. Super. 2021) (citation omitted). "[I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." *Id.*

_____

[4] To the extent Mother argues the trial court erred in finding grounds for termination under Section 2511(a), the record supports the trial court's termination of Mother's parental rights under subsections (1) (failure to perform parental duties for at least six months), and (2) (repeated and continuous incapacity to parent has caused child to be without essential parental care). *See*, *e.g.*, N.T., 9/6/22, at 144-48 (trial court finding, *inter alia*, that Mother's "engagement with her mental health therapy has been on and off and not consistent"; "we have taken a wide right from reunification"; and "Mo[ther] has not undergone the basics" of her parenting objectives).

(citations omitted). "[A] parent's basic constitutional right to the custody and rearing of ... her child is converted, upon the failure to fulfill ... her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *Id.*

Mother claims to be "unsure of the trial court's position concerning her statements of questions involved" because the trial court, in lieu of a comprehensive written opinion, filed a notice of compliance with Pa.R.A.P. 1925(a) referencing the reasoning the court placed on the record. Appellant's Brief at 6. Mother's assertion is disingenuous. As noted above, our review reveals the trial court adequately addressed Mother's issues on the record.

The trial court found Ms. Hylton and Ms. Adebiyi to be credible. N.T., 9/6/22, at 141. The court also found Mother's testimony regarding her relationship with Children not credible. *Id.* at 141-42. The trial court stated:

> The testimony provided today is that… Mo[ther] is often unable to have [C]hildren listen to her. Even the testimony of [Mother's aide] … is that these children are confused as to who they should be listening to when they're in a visit, which in and of itself says that **Mo[ther] is not a parental figure in their [minds]***.*

*Id.* at 144 (emphasis added).

The trial court continued:

> In fact, the testimony is, as I move to 2511(b), **there is no real parent/child bond**. [Children's] bond is with their foster mother. And unfortunately, the longer children stay in care with limited contact with the parents, the more likely it is that their bond with their parents deteriorates to a point where there is no bond. …

> And … the reality is that this [c]ourt has to, at some point, change its focus from preserving the unity of the family **to doing what's in the best interest of the children**. And as we sit here today, … the testimony of [the] caseworker[, Ms. Hylton], which again I find credible, [is that Children] are more bonded with their foster parent …. That's who they call "Mom." That's where they've indicated they want to live.
>
> Even though [Y.M.U.] is only five, and [A.U.] is seven[,] … this [c]ourt is going to find that **there is no parent/child bond between Mo[ther] and these two children such that [termination] would … cause irreparable harm**.
>
> [DHS's witnesses, Ms. Hylton and Ms. Adebiyi,] testified quite extensively that when there have been gaps in visits with Mo[ther], [Children] have indicated that they don't care. And that in fact, they have to be coached by multiple people just to engage in one hour a week visits with Mo[ther]. And so[,] this [c]ourt … find[s] there will not be any detrimental impact in that there is no actual parent/child bond.

N.T., 9/6/22, at 148-49 (emphasis added).

Contrary to Mother's claim, the evidence supports the trial court's decision regarding Children's needs and welfare under Section 2511(b). Accordingly, no relief is due.

In her fifth issue, Mother asserts "errors committed by the court below deprived [Mother] of her rights to due process and equal protection under the law[.]" Appellant's Brief at 3. This issue lacks merit because Mother fails to develop the issue beyond her conclusory claim. ***See id.*** at 12; ***see also Lackner v. Glosser***, 892 A.2d 21, 29 (Pa. Super. 2006) (providing that undeveloped arguments which fail to adhere to the Pennsylvania Rules of Appellate Procedure are waived); ***see also Milby v. Pote***, 189 A.3d 1065, 1079 (Pa. Super. 2018) (noting it is not the duty of the reviewing court to

- 11 -

develop an argument for an appellant or scour the record to find evidence to support an argument).

Finally, in her sixth issue, Mother asserts "errors committed by the court below violated [Mother's] rights under Americans With Disabilities Act of 1990." Appellant's Brief at 3. Mother argues:

> [The] Americans with Disabilities Act of 1990 (ADA), 42 USC section 12101, prohibits discrimination based on disability. Witnesses against Mo[ther] made remarks about concerns for the safety of [C]hildren while in Mo[ther]'s care while she was confined to her wheelchair. (NT p 24). Yet [C]hildren were never hurt while in her care. No arrangements or counselling w[ere] offered to aid the family in being acclimated to Mo[ther]'s disability, the disabled housing and equipment, and didn't encourage [*sic*] Mo[ther]'s use of her aide as her support system. Given the circumstances of this family, it would seem that Mo[ther] was discriminated against due to her disability in violation of ADA.

Appellant's Brief at 13.

> The ADA provides that

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. A public entity includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(b).

In ***Int. of J.J.L.***, 150 A.3d 475 (Pa. Super. 2016), a mother alleged the trial court erred in terminating her parental rights because the agency "failed to modify its policies, practices, and procedures to accommodate mother's

- 12 -

intellectual disability, thereby depriving her of meaningful and equal access to the agency's reunification services in contravention of the [ADA.]" *Id.* at 479. In reviewing mother's claim, this Court recognized "that an agency must put forth a good faith effort in making services available to a parent." *Id.* at 481 (citation omitted). However, we expressly held "the ADA is not applicable to a proceeding regarding the termination of parental rights under the Adoption Act." *Id.* at 482. Furthermore, the trial court in the instant case stated: "Mo[ther]'s disability and that fact that she's in a wheelchair is not why this [c]ourt is terminating [Mother's] rights." N.T., 9/6/22, at 147-48. Mother's sixth issue is unavailing.

In sum, our review reveals the trial court did not err or abuse its discretion in terminating Mother's parental rights.

Decrees affirmed.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/28/2023

- 13 -