J-S11016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.A.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.J., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2580 EDA 2023 |

Appeal from the Decree Entered September 12, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000656-2021

BEFORE: BOWES, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:               **FILED MAY 29, 2024**

L.J. ("Mother") appeals from the decree involuntarily terminating her parental rights to her daughter, M.A.J. ("Child"). We affirm.

The Department of Human Services ("DHS") first became involved in April 2018, after it received a report alleging Mother had given birth to Child and that Mother was intellectually disabled. Trial Court Opinion, filed 1/12/24, at 2. DHS inspected Mother's home and found it had structural concerns, water leaks, and inadequate sleeping provisions for Child. *Id.* at 3. Four days after Child's birth, DHS obtained an order for protective custody, and Child was placed with her current foster parent ("Foster Parent"). *Id.* The court held a shelter care hearing and ordered that Mother be referred to Intellectual Disability Services ("IDS") and Behavioral Health Services. *Id.*

---

[*] Retired Senior Judge assigned to the Superior Court.

The court adjudicated Child dependent in September 2018. *Id.* at 5. It ordered Mother to have weekly supervised visits with Child. *Id.* It also ordered the Community Umbrella Agency, Net Treatment Services, Inc. ("CUA-NET"), to refer Mother for a parenting capacity evaluation ("PCE") and for enrollment in Family School. *Id.*

The court held regular permanency review hearings over the next three years. *Id.* at 5-9. During that time, it ordered Mother to be referred for anger management and housing services and to participate in domestic violence counseling. *Id.* at 6-7.

DHS filed a petition for involuntary termination of Mother's parental rights on November 3, 2021. The court held hearings on the petition on April 11, 2023, August 8, 2023, and September 12, 2023.

The case manager at CUA-NET, Sharaday Holland, testified that Mother had refused IDS services for the first three years, and was discharged from mental health therapy due to poor attendance. *Id.* at 12. She said that Mother had completed the anger management class but not the domestic violence class because she did not believe she had been the aggressor during any incidents of domestic violence. *Id.* She testified Mother had been discharged from Family School because she was unable "to demonstrate that she understands what she is being taught and [that she is] able to apply it throughout the program day." *Id.* at 13. For example, Mother needed to be reminded to stay close to Child to engage with her and to ensure her safety when Child was climbing on furniture. *Id.* at 13-14.

- 2 -

Holland testified "that Mother does not seem to appreciate the gravity of her own challenges or limitations and that it is difficult for Mother to understand some things when they are explained to her." *Id.* at 14. She believes "Mother is incapable of taking the Child home and caring for her." *Id.*

Holland also expressed concerns about Mother's relationship with her paramour. She stated that Mother refuses to live in any residential assistance programs or with any supportive family members if her paramour cannot also stay there, that Mother's paramour "refocus[es her] thinking to what he wants her to think," and that he is the payee on Mother's Supplemental Security Income check. *Id.* at 13.

Holland testified that she has observed visits between Mother and Child, which have always been supervised, and that Child "does not interact with Mother as though she is her mother who cares for her." *Id.* at 14. Meanwhile, Holland testified that she has observed Child interact with Foster Parent, with whom Child is "very much bonded." *Id.* at 14-15. Holland testified that "she does not believe that terminating Mother's parental rights would cause irreparable harm to the Child as she does not see any type of parent-child relationship between Mother and Child." *Id.* at 15.

Dr. Emily Salema, Psy.D., testified that another doctor completed an initial PCE with recommendations for Mother in April 2019. N.T., 4/11/23, at 19; N.T., 8/8/23, at 60. Dr. Salema attempted to complete a new PCE for Mother in July and August 2022, but found Mother was not capable of providing informed consent. Trial Ct. Op. at 15-16; N.T., 4/11/23, at 20. Dr.

- 3 -

Salema was "concerned with Mother's ability to understand the implications of the evaluation and that the information provided would be used by the court to make decisions about parenting." Trial Ct. Op. at 15. She testified that she was able to complete a PCE for Mother in July 2023, and concluded that Mother does not possess the intellectual capacity to independently care for Child. N.T., 8/8/23, at 56, 91-93. Dr. Salema also reviewed a psychological evaluation placing Mother's I.Q. at 59, which Dr. Salema testified would "most likely impact decision making, cognitive flexibility, problem solving, problem identification, and ability to seek assistance when needed." Trial Ct. Op. at 16-17.

Foster Parent testified that Child has lived with her from the time Child was four days old to five months old, at which time Child went to live with one of Mother's relatives. *Id.* at 17. Foster Parent visited Child while she was living with Mother's relative. *Id.* Child returned to Foster Parent when she was 22 months old and has lived with her since then. *Id.* Foster Parent testified that she is the proprietor of a daycare and is accustomed to caring for children with special needs. *Id.* at 17-18. She stated Child "has certain medical challenges including oculocutaneous albinism and vision issues," and that she has requested speech therapy and support for Child's behavioral issues. *Id.* Foster Parent testified that Child calls her "Mom" or "honey" and "exhibits extreme behavior" after her visits with Mother. *Id.* at 18.

A Support Coordinator for Public Health Management Coordination, Nijah Morris, testified for Mother. She stated she is "assigned to support

Mother" and "locate, coordinate, and monitor any sort of services that she may have." *Id.* The court stated Morris "unpersuasively testified that she believed Mother was capable of parenting the Child despite Mother's disability," and that Morris admitted that she has never seen Mother and Child together. *Id.*

Mother's paramour testified that he is married to Mother and that they are both bonded with Child. *Id.* The court found his testimony "to be inconsistent with the credible testimony of other witnesses who testified at the hearing." *Id.* at 19.

Mother testified that the service providers have "not [been] as helpful to her as they should have been." *Id.* She stated that she is willing to reenroll in Family School and explore other housing options even if her paramour cannot accompany her. *Id.*

Child, who is represented by a Child Advocate, presented the testimony of a social worker, Roya Paller. Paller testified that she met with Child, who is "very happy" in Foster Parent's home. *Id.* Child identifies Foster Parent as "Mommy," has a "parental" relationship with her, and "looks to the [Foster P]arent to have her needs met." *Id.*

The court found clear and convincing evidence to terminate Mother's parental rights under Sections 2511(a)(1), (2), (5), and (8). *Id.* at 11. It found that "the dependency issues that caused [Child] to come into foster placement still exist" and that "[t]he record and testimony presented at the Termination Hearing demonstrated Mother's inability to remedy the conditions

that brought the Child into care." ***Id.*** at 9, 10. Regarding Mother's potential ability to comply with her reunification objectives, the court stated:

> This court does not take the fact that Mother suffers from a mental disability lightly, when assessing whether or not her parental rights should be terminated. . . . In this case, Mother seems to genuinely care about her daughter but is unable to care for her due to her own involuntary mental disability. It is well-settled that a parent, whether disabled or not, must be able to meet the irreducible minimum parental requirements of a child who is in care. If a parent cannot, or will not, meet her irreducible minimum parental responsibilities, the needs of the child must prevail over the rights of the parent. It is not required that a disabled person, such as Mother, be offered a plan that she can meet if such a plan would then be insufficient to address her irreducible minimum parental responsibilities. ***In the interest of J.J.L.***, 150 A.3d 475 (Pa. Super. 2016).
>
> . . . The testimony of Ms. Holland, Dr. Salema, Ms. Paller, and the [Foster] Parent was deemed to be credible and accorded great weight. The court was not persuaded by the testimony of Ms. Morris, Mother's Paramour, or Mother. The Court does note that while Mother did blame others for some of her shortcomings, she does seem to genuinely care about the Child. Mother's inability to reunify with the Child is a product of her own cognitive disabilities that present an insurmountable challenge to reunification rather than a lack of love for the Child. Mother's inability to accomplish many of her [Single Case Plan] objectives throughout the history of the case proved to the trial court that the conditions which brought the Child into care had not been, and can never be, remedied.

***Id.*** at 19-20.

The trial court also found clear and convincing evidence that terminating Mother's parental rights would be in Child's best interest under Section 2511(b). ***Id.*** at 9, 10, 11. It found "that a parent/child bond existed between the Child and her current caregiver," and "Mother does not provide the Child with safety and security. The Child's current caretaker is the individual who

has provided for her in all manners since she entered foster care placement."

*Id.* at 9, 19. The court found termination "will provide the Child with much needed permanency which best serves her interests." *Id.* at 9. The court stated,

> [T]he Child is placed in foster care with a supportive caregiver. The trial court found that the testimony and evidence indicated that the Child and her caregiver share a parental bond, and the [caregiver] is providing for the Child's daily emotional and physical needs. In contrast, the trial court found that Mother lacked the capacity and understanding to address her Child's basic emotional and physical needs.

*Id.* at 10-11. The court entered a decree terminating Mother's parental rights.

Mother appealed. She raises the following issues:

1. Did the trial court err as a matter of law or [abuse] its discretion where it determined that the requirements of 23 Pa.C.S.A. [§ 2511(a)(1), (2), (5), and (8)] to terminate [Mother's] parental rights were met?

2. Did the trial court err as a matter of law or [abuse] its discretion where it determined the requirements of 23 Pa.C.S.A. [§] 2511(b) were met?

Mother's Br. at 3.

In her first issue, Mother argues the evidence did not support a finding of termination under Section 2511(a)(1), because "[f]or the entirety of the time that the Child has been in care, the Mother did her best to maintain a relationship with her," and Mother shares a bond with Child. *Id.* at 11. She also argues the court discounted testimony that Mother's paramour and Mother's maternal grandmother offered to help support Mother in raising Child. *Id.*

Mother also argues the evidence did not support termination under Section 2511(a)(2), because it failed to prove Mother was incapable of parenting Child. *Id.* at 12. Mother contends she was not offered enough time to put the recommendations of the PCE into effect. *Id.*

Mother further argues the evidence did not support termination under subsections (a)(5) or (a)(8). She asserts, "A determination that the parents' incapacity results in an inability to care for the children and that the condition cannot improve over time is alone insufficient to warrant termination under 2511(a)(5)." *Id.* at 14 (quoting *In re P.A.B.*, 570 A.2d 522, 528 (Pa.Super. 1990)). She argues that here, the conditions that led to removal were due to her incapacity. She also asserts that termination was not in Child's best interest because Mother has a strong bond with Child, has familial support from her paramour and Child's maternal grandmother, and because she was not given sufficient time to rectify any perceived shortcomings as a caregiver. *Id.*

In her second issue, Mother argues the court erred in concluding termination was in Child's best interest under Section 2511(b). She argues due to the bond between Child and Mother, Child's best interest would be best served by an Order of Permanent Legal Custody that would permit Child to have continued contact with Mother.

We review an involuntary termination of parental rights pursuant to the following standard.

> A party seeking termination of parental rights bears the burden of establishing grounds for termination by clear and convincing evidence. Clear and convincing evidence is evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. We accept the findings of fact and credibility determinations of the trial court if the record supports them. If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion.

*In re Adoption of K.C.*, 199 A.3d 470, 473 (Pa.Super. 2018) (citations and quotation marks omitted).

Termination of parental rights is controlled by Section 2511 of the Adoption Act, which requires a bifurcated analysis. *Int. of S.S.*, 252 A.3d 681, 686 (Pa.Super. 2021). "Initially, the focus is on the conduct of the parent," such that "the party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." *Id.* (citation omitted). If the trial court finds termination warranted under multiple subsections of Section 2511(a), this Court need only affirm the application of one subsection. *In Int. of: T.J.J.M.*, 190 A.3d 618, 627 (Pa.Super. 2018). Once any subsection of Section 2511(a) has been met, the trial court must then determine "the needs and welfare of the child under the standard of best interests of the child" pursuant to Section 2511(b). *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007).

Here, the court found termination warranted under Sections 2511(a)(1), (2), (5), (8), and (b):

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. . . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child. . . .

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child. . . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein

which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b).

We affirm the trial court's finding that there was clear and convincing evidence to support termination under Section 2511(a)(2). This required DHS to prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa.Super. 2021).

Subsection (a)(2) does not require that the court find that the parent refused to perform parental duties. Rather, subsection (a)(2) recognizes that "parents who are incapable of performing parental duties are no less unfit than parents who refuse to perform them." *In re N.C.*, 763 A.2d 913, 918 (Pa.Super. 2000). Even "sincere efforts to perform parental duties" may be insufficient to remedy a parental incapacity found under this subsection. *In re Z.P.*, 994 A.2d 1108, 1117 (Pa.Super. 2010) (citation omitted). Providing for termination due to parental incapacity allows the court to consider "a child's need for a stable home and strong, continuous parental ties," particularly "where disruption of the family has already occurred and there is no reasonable prospect for reuniting it." *In re Z.P.*, 994 A.2d at 1117 (citation omitted) (emphasis removed). A court may make a finding of parental incapacity based on inherent intellectual disabilities. *See, e.g., In re*

- 11 -

*Adoption of A.H.*, 247 A.3d 439, 443 (Pa.Super. 2021); *In re B.L.W.*, 843 A.2d 380, 387 (Pa.Super. 2004) (*en banc*).

Here, the court found that Mother suffers from an intellectual disability that prevents her from providing adequate care for Child and "present[s] an insurmountable challenge to reunification." Trial Ct. Op. at 20. The record supports this finding. Both Holland and Dr. Salema testified to Mother's cognitive disabilities. The court found their testimony to be credible. Holland also testified that Family School discharged Mother from the program due to her inability to progress. Mother has not explained how additional time to comply with her PCE recommendations would enable her to remedy her incapacity, particularly given that Child was removed in 2018 and the termination hearing was held approximately five years later.

We therefore affirm the finding under subsection (a)(2). As we affirm under that subsection, we need not discuss the applicability of the other subsections of 2511(a).

We also affirm the court's finding that grounds for termination existed under Section 2511(b). As stated above, this subsection requires the court to consider the developmental, physical, and emotional needs and welfare of the child. 23 Pa.C.S.A. § 2511(b). A major aspect of this analysis "concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond." *In re L.M.*, 923 A.2d at 511.

Here, the court found that Foster Parent provides all care for Child, while Mother, who has never been Child's caretaker, lacks the capacity and understanding to address Child's needs. The court also found that Foster Parent and Child share a parental bond. It credited Holland's testimony, which included her belief that there is no parental bond between Mother and Child that would cause irreparable harm to Child if severed. The court concluded that while Mother loves Child, termination of Mother's parental rights will provide Child with the permanency that will best serve Child's interests.

We accept the court's credibility determinations and factual findings, as well as its conclusion that clear and convincing evidence established termination would be in Child's best interest. We therefore affirm the decree terminating Mother's parental rights as to Child.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/29/2024